2013 OK 36

**Timothy WALL, Appellant,**

v.

**John S. MAROUK, D.O., Appellee.**

**No. 109,005.**

Supreme Court of Oklahoma.

June 4, 2013.

Glenn R. Beustring, Tulsa, Oklahoma, for Appellant.

S. Lance Freije, Brian Jack Goree, Bob Latham, Ambar Iqbal Malik, Tulsa, Oklahoma, for Appellee.

KAUGER, J.:

¶1 The dispositive issue presented is whether, in the aftermath of *Zeier v. Zimmer*, 2006 OK 98, 152 P.3d 861, the legislative amendment to 12 O.S.2011 § 19[1], removed the unconstitutional infirmity from the requirement of an affidavit of merit in any civil action for professional negligence. An examination of the Okla. Const. art. 5, § 46[2], art.

1. At the time this cause was commenced, the 2011 code volumes had not yet been published. However, as there has been no change in § 19 since its codification, this opinion refers to the 2011 statutes rather than the 2009 Supplement. Title 12 O.S.2011 § 19 provides:
A. 1. In any civil action for professional negligence, except as provided in subsection B of this section, the plaintiff shall attach to the petition an affidavit attesting that:
a. the plaintiff has consulted and reviewed the facts of the claim with a qualified expert,
b. the plaintiff has obtained a written opinion from a qualified expert that clearly identifies the plaintiff and includes the determination of the expert that, based upon a review of the available material including, but not limited to, applicable medical records, facts or other relevant material, a reasonable interpretation of the facts supports a finding that the acts or omissions of the defendant against whom the action is brought constituted professional negligence, and
c. on the basis of the review and consultation of the qualified expert, the plaintiff has concluded that the claim is meritorious and based on good cause.
2. If the civil action for professional negligence is filed:
a. without an affidavit being attached to the petition, as required in paragraph 1 of this subsection, and
b. no extension of time is subsequently granted by the court, pursuant to subsection B of this section, the court shall, upon motion of the defendant, dismiss the action without prejudice to its refiling.
3. The written opinion from the qualified expert shall state the acts or omissions of the defendant or defendants that the expert then believes constituted professional negligence and shall include reasons explaining why the acts or omissions constituted professional negligence. The written opinion from the qualified expert shall not be admissible at trial for any purpose nor shall any inquiry be permitted with regard to the written opinion for any purpose either in discovery or at trial.
B. 1. The court may, upon application of the plaintiff for good cause shown, grant the plaintiff an extension of time, not exceeding ninety (90) days after the date the petition is filed, except for good cause shown, to file in the action an affidavit attesting that the plaintiff has obtained a written opinion from a qualified expert as described in paragraph 1 of subsection A of this section.
2. If on the expiration of an extension period described in paragraph 1 of this subsection, the plaintiff has failed to file in the action an affidavit as described above, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling. If good cause is shown, the resulting extension shall in no event exceed sixty (60) days.
C. 1. Upon written request of any defendant in a civil action for professional negligence, the plaintiff shall, within ten (10) business days after receipt of such request, provide the defendant with:
a. a copy of the written opinion of a qualified expert mentioned in an affidavit filed pursuant to subsection A or B of this section, and
b. an authorization from the plaintiff in a form that complies with applicable state and federal laws, including the Health Insurance Portability and Accountability Act of 1996, for the release of any and all medical records related to the plaintiff for a period commencing five (5) years prior to the incident that is at issue in the civil action for professional negligence.
2. If the plaintiff fails to comply with paragraph 1 of this subsection, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling.
D. A plaintiff in a civil action for professional negligence may claim an exemption to the provisions of this section based on indigency pursuant to the qualification rules established as set forth in Section 4 of this act.
(Internal citations omitted).

2. Okla. Const. art. 5, § 46 provides:
§ 46. **Local and special laws on certain subjects prohibited**
The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
The creation, extension, or impairing of liens;
Regulating the affairs of counties, cities, towns, wards, or school districts;
Changing the names of persons or places;
Authorizing the laying out, opening, altering, or maintaining of roads, highways, streets, or alleys;
Relating to ferries or bridges, or incorporating ferry or bridge companies, except for the erection of bridges crossing streams which form boundaries between this and any other state;
Vacating roads, town plats, streets, or alleys;
Relating to cemeteries, graveyards, or public grounds not owned by the State;

2, § 6[3], 63 O.S.2011 § 1–1708.1C, as well as prior case law, leads to the inevitable conclusion that it did not. We hold that it is a special law regulating the practice of law and that it places an impermissible financial burden on access to the courts.

## FACTS

¶ 2 Appellant Timothy Wall (Patient) filed a petition for medical negligence against Dr. John S. Marouk, D.O. (Physician) on August 11, 2010. The patient alleged that the physician negligently cut the median nerve in his right arm during a carpal tunnel surgery, resulting in loss of feeling in his right fingers. The patient did not attach an affidavit of merit as required by 12 O.S.2011 § 19. The physician filed a motion to dismiss on September 8, 2010, on the grounds that the patient failed to include the affidavit of merit.

¶ 3 In response to the physician's motion to dismiss, the patient argued that 12 O.S 2011 § 19 was unconstitutional based on this court's holding in *Zeier v. Zimmer*. On December 9, 2010, the trial court entered a certified interlocutory order denying the physician's motion to dismiss, and giving the patient twenty days from the date of the order to file an affidavit of merit pursuant to 12 O.S 2011 § 19 or face dismissal of the cause. On January 3, 2011, the trial court entered an amended certified interlocutory order stating that 12 O.S.2011 § 19 required an affidavit of merit finding the patient's arguments unpersuasive.[4] On February 14, 2011, we granted the patient's Petition for Certiorari to Review a Certified Interlocutory Order and stayed proceedings in the trial court pending review on certiorari to consider the constitutionality of 12 O.S.2011 § 19. The cause was assigned to this office on February 28, 2013.

Authorizing the adoption or legitimation of children;
Locating or changing county seats;
Incorporating cities, towns, or villages, or changing their charters;
For the opening and conducting of elections, or fixing or changing the places of voting;
Granting divorces;
Creating offices, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts;
Changing the law of descent or succession;
**Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the methods for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate;**
Regulating the fees, or extending the powers and duties of aldermen, justices of the peace, or constables;
Regulating the management of public schools, the building or repairing of school houses, and the raising of money for such purposes;
Fixing the rate of interest;
Affecting the estates of minors, or persons under disability;
Remitting fines, penalties and forfeitures, and refunding moneys legally paid into the treasury;
Exempting property from taxation;
Declaring any named person of age;
Extending the time for the assessment or collection of taxes, or otherwise relieving any assessor or collector of taxes from due performance of his official duties, or his securities from liability;
Giving effect to informal or invalid wills or deeds;

Summoning or impaneling grand or petit juries;
For limitation of civil or criminal actions;
For incorporating railroads or other works of internal improvements;
Providing for change of venue in civil and criminal cases. (Emphasis added).

3. The Okla. Const. art 2, § 6 provides:

**§ 6. Courts of justice open—Remedies for wrongs—Sale, denial or delay**
The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.

4. The patient filed a Petition in Error on Certified Interlocutory order with this Court on December 14, 2010, in response to three minute orders issued by the trial court on December 7, 2010. On December 16, 2010, this Court ordered the patient to show cause why his appeal should not be dismissed for lack of an appealable order. On December 17, 2010, the physician filed a motion to dismiss arguing lack of an appealable order, and the patient responded on December 30, 2010.

On January 4, 2011, this Court entered an order acknowledging the filing of the district court's Amended Certified Interlocutory Order on January 3, 2011. We directed the patient to file a supplemental petition for certiorari—certified interlocutory order no later than January 18, 2011. The patient filed his Amended Petition for Certiorari Certified Interlocutory Order, as well as a Motion to Retain, on January 11, 2011. This

## I.

## TITLE 12 O.S.2011 § 19 IS A SPECIAL LAW WHICH VIOLATES THE OKLA. CONST., ART. 5, § 46.

¶ 4 Title 12 O.S.2011 § 19 essentially provides that in civil actions for professional negligence, the plaintiff must attach an expert's affidavit. It creates two classes, those who file a cause of action for negligence generally, and those who file a cause of action for professional negligence. The patient argues that § 19 is unconstitutional because it violates the Okla. Const. art. 5, § 46 prohibition on special laws. We agree. The Oklahoma Constitution is a unique document. Some of its provisions are unlike those in the constitutions of any other state, and some are more detailed and restrictive than those of other states. Section 46 is one of these provisions and it specifically prohibits the Legislature from enacting special laws dealing with twenty-eight subject areas.[5]

¶ 5 A special law confers some right or imposes some duty on some but not all of the class of those who stand upon the same footing and same relation to the subject of the law.[6] A law is special if it confers particular privileges or imposes peculiar disabilities or burdensome conditions in the exercise of a common right on a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law.[7] Special laws apply to less than the whole of a class of persons, entities or things standing upon the same footing or in substantially the same situation or circumstances, and thus do not

have a uniform operation.[8] The shortcoming of a special law is that it does not embrace all the classes that it should naturally embrace, and that it creates preference and establishes inequality. It applies to persons, things, and places possessed of certain qualities or situations and excludes from its effect other not dissimilar persons, things, or places.[9]

¶ 6 Here, the distillate of art. 5, § 46 is that the Legislature shall not pass a special law regulating the practice of judicial proceedings before the courts or any other tribunal.[10] This is precisely the situation we face. Title 12 O.S.2011 § 19 creates a new subclass of tort victims and tortfeasors known as professional tort victims and tortfeasors. In doing so, it places an out of the ordinary enhanced burden on these subgroups to access the courts by requiring victims of professional misconduct to obtain expert review in the form of an affidavit of merit prior to proceeding, and it requires the victims of professional misconduct to pay the cost of expert review.[11] It does establish an impermissible special law regulating the practice of judicial proceedings before the courts.

¶ 7 The prohibition against special laws is not new. Even before statehood and the adoption of the Oklahoma Constitution, special laws were not permissible. In *Guthrie Daily Leader v. Cameron*, 1895 OK 71, 41 P. 635, the Supreme Court of the Territory of Oklahoma held that:

A statute relating to persons or things as a class is a general law. One relating to particular persons or things of a class is special. The number of persons upon

Court's grant of certiorari has rendered moot the patient's pending motion to retain.

5. *Reynolds v. Porter*, 1988 OK 88, § 17, 760 P.2d 816.

6. *Oklahoma City v. Griffin*, 1965 OK 76, ¶ 8, 403 P.2d 463.

7. *Oklahoma City v. Griffin*, see note 6, supra at ¶ 3 (quoting *Serve Yourself Gasoline Stations Ass'n v. Brock*, 39 Cal.2d 813, 820, 249 P.2d 545).

8. *Fenimore v. State ex rel. Com'rs of Land Office*, 200 Okla. 400, 402, 194 P.2d 852, 854 (Okla. 1948).

9. *Barrett v. Bd. of Com'rs of Tulsa County*, 185 Okla. 111, 90 P.2d 442, 446 (Okla.1939).

10. Okla. Const. art. 5, § 46 provides in pertinent part:
The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: . . . .
Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the methods for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate; . . .

11. Title 12 O.S.2011 § 19, see note 1, supra.

whom the law shall have any direct effect may be very few, by reason of the subject to which it relates, but it must operate equally and uniformly upon all brought within the relations and circumstances for which it provides.

Shortly after statehood, we held in *Chickasha Cotton Oil Co. v. Lamb & Tyner*, 1911 OK 68, 114 P. 333, 333, that the Okla. Const. art. 5, § 46 prohibited the enactment of special or local laws upon any of the subjects named within it, except such local or special legislation upon subjects authorized by other provisions of the Okla. Constitution.

¶ 8 It is undisputed that during the course of litigation the plaintiffs will be required to prove their case, as any other cause requires. They just do not have to provide expert testimony before it can be filed. After the Field Code was replaced by the Oklahoma Pleading Code of 1984, access to the district court was simplified and streamlined.[12] It recognized that there was one form of action—a civil action which was applicable to all suits of a civil nature.[13] Further, it specified that a short and plain statement of the claim showing that the pleader was entitled

to relief was sufficient to constitute a pending claim.[14] This form of notice pleading recognized that discovery, pretrial conferences, and summary judgments are more effective methods of performing the functions of disclosing the factual and legal issues in dispute, pretrial planning, and disposing of frivolous or unfounded claims and defenses which historically were performed by the pleadings.[15] The requirement of an affidavit of merit before an action can proceed represents a step back from this more open pleading standard, and moreover, does not apply equally to all civil actions but only to a subset of the class—actions for professional negligence.

## A.

### Title 12 O.S.2011 § 19 is functionally identical to the affidavit requirement found unconstitutional in *Zeier v. Zimmer*, 2006 OK 98, 152 P.3d 861.

¶ 9 In *Zeier v. Zimmer*, 2006 OK 98, 152 P.3d 861, we held that a previous incarnation of the affidavit of merit requirement, found at 63 O.S. Supp.2003 § 1–1708.1E was an unconstitutional special law.[16] That law re-

---

**12.** Title 12 O.S.2011 § 2001.

**13.** Title 12 O.S.2011 § 2002 provides:
There shall be one form of action to be known as "civil action".

**14.** Title 12 O.S.2011 § 2008 provides in pertinent part:
A. CLAIMS FOR RELIEF. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain:
1. A short and plain statement of the claim showing that the pleader is entitled to relief; and
2. A demand for judgment for the relief to which he deems himself entitled. Every pleading demanding relief for damages in money in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code shall, without demanding any specific amount of money, set forth only that the amount sought as damages is in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code, except in actions sounding in contract. Every pleading demanding relief for damages in money in an amount that is required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code or less shall specify the amount of such damages sought to be recovered. Relief in the alternative or of several different types may be demanded.

**15.** Title 12 O.S.2011 § 2008, Committee Comment to Section 2008.

**16.** *Zeier v. Zimmer* was decided by this Court 8 to 1, with all members of the current Court who were on the Court when Zeier was decided concurring or concurring in result. Title 63 O.S. Supp.2003 § 1–1708.1E (repealed by Okla. Sess. Laws 2009, c. 228, § 87) provided:
A. 1. In any medical liability action, except as provided in subsection B of this section, the plaintiff shall attach to the petition an affidavit attesting that:
a. the plaintiff has consulted and reviewed the facts of the claim with a qualified expert,
b. the plaintiff has obtained a written opinion from a qualified expert that clearly identifies the plaintiff and includes the expert's determination that, based upon a review of the available medical records, facts or other relevant material, a reasonable interpretation of the facts supports a finding that the acts or omissions of the health care provider against whom the action is brought constituted professional negligence, and
c. on the basis of the qualified expert's review and consideration, the plaintiff has concluded that the claim is meritorious and based on good cause.
2. If a medical liability action is filed:
a. without an affidavit being attached to the petition, as required in paragraph 1 of the subsection, and

quired an affidavit in any action for **medical liability,** whereas the current version of the requirement in § 19 requires the affidavit in actions for **professional negligence.**[17]

¶ 10 Interestingly, 12 O.S.2011 § 19 does not define professional negligence in the context of the affidavit requirement, nor does any other section of Title 12, the code of civil procedure.[18] Professional negligence is defined only one place in the Oklahoma statutes. The definition is found in the Affordable Access to Health Care Act, the same Act that contained the original affidavit of merit provision we previously held unconstitutional in *Zeier.* Title 63 O.S.2011 § 1–1708.1C, the Definitions section of the Affordable Access to Health Care Act, defines professional negligence as:

5. "Professional negligence" means **a negligent act or omission to act by a health care provider in the rendering of health care services,** provided that such services are within the scope of services for which the health care provider is licensed, certified, or otherwise authorized to render by the laws of this state, and which are not within any restriction imposed by a hospital or the licensing agency of the health care provider ...

The same section defines medical liability action as:

3. "Medical liability action" means **any civil action involving, or contingent upon, personal injury or wrongful death brought against a health care provider based on professional negligence ...**

The medical affidavit requirement we previously found unconstitutional in *Zeier* was codified at § 1–1708.1E, part of the very same Affordable Access to Health Care Act that contains these two definitions. It appears the Legislature re-enacted the affidavit requirement in a different title using the words professional negligence rather than medical liability but otherwise left the language essentially the same. But, the Legislature did not remove the two definitions from the Affordable Access to Health Care Act.

¶ 11 Codified at 63 O.S. Supp.2003 § 1–1708.1E, the original affidavit requirement provided in pertinent part:

A. 1. In any **medical liability action,** except as provided in subsection B of this

---

b. no extension of time is subsequently granted by the court, pursuant to subsection B of this section, the court shall, upon motion of the defendant, dismiss the action without prejudice to its refiling.
3. The written opinion from the qualified expert shall state the acts or omissions of the defendant(s) that the expert then believes constituted professional negligence and shall include reasons explaining why the acts or omissions constituted professional negligence. The written opinion from the qualified expert shall not be admissible at trial for any purpose nor shall any inquiry be permitted with regard to the written opinion for any purpose either in discovery or at trial.
B. 1. The court may, upon application of the plaintiff for good cause shown, grant the plaintiff an extension of time, not exceeding ninety (90) days after the date the petition is filed, except for good cause shown, to file in the action an affidavit attesting that the plaintiff has obtained a written opinion from a qualified expert as described in paragraph 1 of subsection A of this section.
2. If on the expiration of an extension period described in paragraph 1 of this subsection, the plaintiff has failed to file in the action an affidavit as described above, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling.

C. 1. Upon written request of any defendant in a medical liability action, the plaintiff shall, within ten (10) business days after receipt of such request, provide the defendant with:
a. a copy of the written opinion of a qualified expert mentioned in an affidavit filed pursuant to subsection A or B of this section, and
b. an authorization from the plaintiff in a form that complies with applicable state and federal laws, including the Health Insurance Portability and Accountability Act of 1996, for the release of any and all medical records related to the plaintiff for a period commencing five (5) years prior to the incident that is at issue in the medical liability action.
2. If the plaintiff fails to comply with paragraph 1 of this subsection, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to the refiling.

17. Title 12 O.S.2011 § 19 provides in pertinent part:

A. 1. In any civil action for professional negligence, except as provided in subsection B of this section, the plaintiff shall attach to the petition an affidavit ...

18. Title 12 O.S.2011 § 19.

section, the plaintiff shall attach to the petition an affidavit . . .

The language of the new affidavit requirement, codified at 12 O.S.2011 § 19 and which we examine today, provides in pertinent part:

A. 1. In any **civil action for professional negligence,** except as provided in subsection B of this section, the plaintiff shall attach to the petition an affidavit

Both the phrases medical liability action and professional negligence are defined at 63 O.S. 2011 § 1–1708.1C, as discussed above, but not in § 19.

¶ 12 It is within the province of the legislative body to define words appearing in legislative acts, and where an act passed by the legislature embodies a definition, it is binding on the courts.[19] Title 25 O.S.2011 § 2 provides:

Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs, except where contrary intention plainly appears.

When the provisions of a statute assign one meaning to a word or phrase, its definition will apply in every other instance in which the same word is found anywhere else in the statutory compilation.[20] Section 19 does not contain a definition for professional negligence, but because professional negligence is defined in the Affordable Access to Health Care Act at 63 O.S.2011 § 1–1708.1C, the definition that professional negligence means an act or omission by a health care provider rendering health care services is applicable to § 19.

¶ 13 It has long been settled in this state that one cannot do indirectly what cannot be done directly.[21] An examination of the definitions for medical liability action and professional negligence illustrates that they are intrinsically tied together. **An action for professional negligence is a medical liability action** insofar as 63 O.S.2011 § 1–1708.1C is concerned.

¶ 14 Even without the definition of professional negligence found at 63 O.S.2011 § 1–1708.1C there are problems with vagueness. If the Legislature did not intend professional negligence to mean "a negligent act or omission to act by a health care provider in the rendering of health care services,"[22] then what did they mean? Black's Law Dictionary defines professional as "[a] person who belongs to a learned profession or whose occupation requires of a high level of training and proficiency."[23] Profession is further defined as:

A vocation requiring advanced education and training; esp., one of the three traditional learned professions—law, medicine, and the ministry.[24]

Does this mean that one is required to obtain an affidavit of merit pursuant to § 19 before filing suit against any doctor, lawyer or clergyman for negligence in performing their duties? Is professional in this context intended to be broader still? Title 59 of the Oklahoma Statutes, entitled "Professions and Occupations," contains multiple subchapters that control the licensing and practice of what could be considered various professions in the State of Oklahoma.

¶ 15 For example, 59 O.S.2011 § 15.1A, which provides definitions under the Oklahoma Accountancy Act, defines accountancy as "the profession or practice of accounting."[25] Title 59 O.S.2011 § 396.2, concerning

**19.** *Oliver v. City of Tulsa,* 1982 OK 121, ¶ 19, 654 P.2d 607, 654 P.2d 607; *Traxler v. State,* 96 Okla.Crim. 231, 251 P.2d 815.

**20.** *McClure v. ConocoPhillips Co.,* 2006 OK 42, ¶ 13, 142 P.3d 390; *Fraternal Order of Police, Lodge 108 v. City of Ardmore,* 2002 OK 19, ¶ 14, 44 P.3d 569; *Stone v. Hodges,* 1967 OK 214, ¶ 6, 435 P.2d 165.

**21.** *Perry Water, Light & Ice Co. v. City of Perry,* 29 Okla. 593, 120 P. 582, 588 (Okla.1911); *Superior Mfg. Co. v. School Dist. No. 63, Kiowa County,* 28 Okla. 293, 114 P. 328, 330 (Okla.1910).

**22.** Title 63 O.S.2011 § 1–1708.1C.3.

**23.** Black's Law Dictionary (9th ed. 2009), professional.

**24.** Black's Law Dictionary (9th ed. 2009), profession.

**25.** Title 59 O.S. 15.1A (1) provides:

1. "Accountancy" means the profession or practice of accounting.

funeral services, defines a funeral establishment partly as "any place where any person or persons shall hold forth and be engaged in the profession of undertaking or funeral directing." [26] Title 59 also contains other chapters for: barbers, cosmetology, plumbers and plumbing contractors, foresters, sanitarians and environmental specialists, bail bondsmen, pawnbrokers, and many more. Title 18 O.S. 2011 § 803 provides definitions for the Professional Entity Act which governs the creation of professional corporations in Oklahoma. It includes a broad definition for professional service.[27]

26. Title 59 O.S.2011 § 396.2(3) provides:

3. "Funeral establishment" means a place of business used in the care and preparation for burial, commercial embalming, or transportation of dead human remains, or any place where any person or persons shall hold forth and be engaged in the profession of undertaking or funeral directing.

27. Title 18 O.S.2011 § 803(6) provides:

6. "Professional service" means the personal service rendered by:

a. a physician, surgeon or doctor of medicine pursuant to a license under Sections 481 through 524 of Title 59 of the Oklahoma Statutes, and any subsequent laws regulating the practice of medicine,

b. an osteopathic physician or surgeon pursuant to a license under Sections 620 through 645 of Title 59 of the Oklahoma Statutes, and any subsequent laws regulating the practice of osteopathy,

c. a chiropractic physician pursuant to a license under Sections 161.1 through 161.20 of Title 59 of the Oklahoma Statutes, and any subsequent laws regulating the practice of chiropractic,

d. a podiatric physician pursuant to a license under Sections 135.1 through 160.2 of Title 59 of the Oklahoma Statutes, and any subsequent laws regulating the practice of podiatric medicine,

e. an optometrist pursuant to a license under Sections 581 through 606 of Title 59 of the Oklahoma Statutes, and any subsequent laws regulating the practice of optometry,

f. a veterinarian pursuant to a license under Sections 698.1 through 698.30b of Title 59 of the Oklahoma Statutes, and any subsequent laws regulating the practice of veterinary medicine,

g. an architect pursuant to a license under Sections 46.1 through 46.41 of Title 59 of the Oklahoma Statutes, and any subsequent laws regulating the practice of architecture,

h. an attorney pursuant to his authority to practice law granted by the Supreme Court of the State of Oklahoma,

i. a dentist pursuant to a license under Sections 328.1 through 328.53 of Title 59 of the Oklahoma Statutes, and any subsequent laws regulating the practice of dentistry,

j. a certified public accountant or a public accountant pursuant to his or her authority to practice accounting under Sections 15.1 through 15.38 of Title 59 of the Oklahoma Statutes, and any subsequent laws regulating the practice of public accountancy,

k. a psychologist pursuant to a license under Sections 1351 through 1376 of Title 59 of the Oklahoma Statutes, and any subsequent laws regulating the practice of psychology,

l. a physical therapist pursuant to a license under Sections 887.1 through 887.18 of Title 59 of the Oklahoma Statutes, and any subsequent laws regulating the practice of physical therapy,

m. a registered nurse pursuant to a license under Sections 567.1 through 567.19 of Title 59 of the Oklahoma Statutes, and any other subsequent laws regulating the practice of nursing,

n. a professional engineer pursuant to a license under Sections 475.1 through 475.22a of Title 59 of the Oklahoma Statutes, and any subsequent laws relating to the practice of engineering,

o. a land surveyor pursuant to a license under Sections 475.1 through 475. 22a of Title 59 of the Oklahoma Statutes, and any subsequent laws relating to the practice of land surveying,

p. an occupational therapist pursuant to Sections 888.1 through 888.15 of Title 59 of the Oklahoma Statutes and any subsequent law regulating the practice of occupational therapy,

q. a speech pathologist or speech therapist pursuant to Sections 1601 through 1622 of Title 59 of the Oklahoma Statutes, and any subsequent law regulating the practice of speech pathology,

r. an audiologist pursuant to Sections 1601 through 1622 of Title 59 of the Oklahoma Statutes, and any subsequent law regulating the practice of audiology,

s. a registered pharmacist pursuant to Sections 353 through 366 of Title 59 of the Oklahoma Statutes, and any subsequent law regulating the practice of pharmacy,

t. a licensed perfusionist pursuant to Sections 2051 through 2071 of Title 59 of the Oklahoma Statutes, and any subsequent laws regulating the practice of perfusionists,

u. a licensed professional counselor pursuant to Sections 1901 through 1920 of Title 59 of the Oklahoma Statutes, and any subsequent law regulating the practice of professional counseling,

v. a licensed marital and family therapist pursuant to Sections 1925.1 through 1925.18 of Title 59 of the Oklahoma Statutes, and any subsequent law regulating the practice of marital and family therapy,

w. a dietitian licensed pursuant to Sections 1721 through 1739 of Title 59 of the Oklahoma Statutes and any subsequent laws regulating the practice of dietitians,

x. a social worker licensed pursuant to Sections 1250 through 1273 of Title 59 of the Oklahoma Statutes, and any subsequent laws regulating the practice of social work,

y. a licensed alcohol and drug counselor pursuant to Sections 1870 through 1885 of Title 59 of

¶ 16 If the Legislature intended to apply the definition of professional negligence found in 63 O.S.2011 § 1–1708.1C, then the affidavit requirement applies to the same subclass and set of actions as the provision we found unconstitutional as a special law in *Zeier*. If the Legislature intended to avoid the prohibition on special laws by leaving professional negligence undefined, they have caused more problems than they solved. The provision would, taken to the ultimate logical conclusion, require an affidavit for almost every cause of action.

## B.

**Because the current incarnation of the affidavit of merit provision codified at 12 O.S.2011 § 19 is functionally the same as the previous unconstitutional provision analyzed in Zeier, it is also unconstitutional.**

¶ 17 The affidavit of merit requirement contained within § 19 still divides tort victims alleging negligence into two classes: those who pursue a cause of action for negligence generally and those who name professionals as defendants. It fails the test set forth in *Zeier* because an additional requirement is added to actions for professional negligence. Not only have we defined what a special law is since before statehood, we have reiterated repeatedly in *Reynolds v. Porter*, 1988 OK 88, § 17, 760 P.2d 816, and a long line of other cases, that the Okla. Const. art. 5, § 46 is an absolute and unequivocal prohibition against special legislation in the listed subject areas, in this instance the regulation of judicial proceedings.[28]

¶ 18 We held in *City of Enid v. Public Employees Relations Bd.*, 2006 OK 16, ¶ 8, 133 P.3d 281, that general laws must apply equally to all classes similarly situated, and apply to like conditions and subjects. We also noted, citing *Reynolds*, that civil actions may be classified into specific categories of tort actions of a similar nature for statute of limitation purposes, and that doing so would not, for similar and more commanding reasons, constitute a special or local law that would violate the strictures contained in § 46.[29] However, we recognized that *Reynolds* held that a statute carving out a special class of tort victims, those who suffered medical malpractice, for purposes of applying a special three year statute of limitations was a special law.[30] Because this Court held in *Zeier* that the first incarnation of the medical affidavit requirement found at 63 O.S. Supp. 2003 § 1–1708.1E was an unconstitutional special law pursuant to the Okla. Const. art. 5, § 46, it would be inconsistent to hold that the current iteration at § 19, incorporating the same class of tort victims, definitions and requirements, is not.

## II.

## TITLE 12 O.S.2011 § 19 IS AN UNCONSTITUTIONAL ECONOMIC BURDEN ON ACCESS TO THE COURTS PURSUANT TO THE OKLA. CONST. ART. 2, § 6.

¶ 19 The patient also alleges that 12 O.S.2011 § 19 creates an unconstitutional burden on access to the courts by requiring an affidavit of merit for any civil action for professional negligence.[31] The Okla. Const. art. 2, § 6 provides that:

The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be

the Oklahoma Statutes, and any subsequent laws regulating the practice of alcohol and drug counseling, or
z. a licensed behavioral practitioner pursuant to Sections 1930 through 1949.1 of Title 59 of the Oklahoma Statutes, and any subsequent laws regulating the practice of behavioral health services ...

28. *Reynolds*, see note 5, supra at ¶ 21; *Maule v. Indep. School Dist. No. 9*, 1985 OK 110, ¶ 12, 714 P.2d 198; *City of Tulsa v. McIntosh*, 1930 OK 71,

¶ 11–12, 284 P. 875; *Union School Dist. No. 1 v. Foster Lumber Co.*, 1930 OK 50, ¶ 7, 286 P. 774; *Bradford v. Cole*, 1923 OK 571, ¶ 4, 217 P. 470.

29. *City of Enid v. Public Employees Relations Bd.*, 2006 OK 16, ¶ 9, 133 P.3d 281 (citing *Reynolds*, see note 5, supra at ¶ 18.)

30. *Reynolds*, see note 5, supra at ¶¶ 18–21.

31. Title 12 O.S.2011 § 19, see note 1, supra.

administered without sale, denial, delay, or prejudice.

¶ 20 In *Barzellone v. Presley*, 2005 OK 86, 126 P.3d 588, we examined the constitutionality of a $349 jury fee imposed by statute. We held that such fees are permissible, as long as they are reasonable, because the right of litigants to access the courts does not mean that they are entitled to do so at no cost.[32] However, we were careful to qualify our decision, noting that:

> This opinion should not be read as a rubber stamp for any decision the Legislature might make on the amount of fees levied in association with jury trials. The Oklahoma Constitution does not anticipate that litigants will be burdened with the entire bill for maintenance of the court system. *Mehdipour v. State ex rel. Dept. of Corrections*, 2004 OK 19, ¶ 20, 90 P.3d 546 ... The constitutional right to a jury trial is a personal right, *Massey v. Farmers Ins. Group*, 1992 OK 80, ¶ 16, 837 P.2d 880; *Jenkins v. State*, 1912 OK CR 8 [6 Okla. Crim. 516,] 120 P. 298, which the Legislature cannot waive, *Massey v. Farmers Ins. Group*, 1992 OK 80, ¶ 16, 837 P.2d 880, through creating a fiscal barrier so unreasonable as to eliminate the right itself. When comparing the jury fee charge with a jury proceeding utilizing 6 jurors, it would appear that the $349.00 fee charge approaches the barrier beyond which the charge could not survive constitutional scrutiny.[33]

¶ 21 A year later, we revisited the issue in *Zeier v. Zimmer, Inc.*, 2006 OK 98, ¶ 19; 152 P.3d 861. There, we agreed with a patient that a statutorily created requirement for the payment of professional services as a prerequisite to filing a petition alleging medical negligence violated the guarantee of access to the courts.[34] In *Zeier*, we calculated that the cost of obtaining a professional's opinion to support the affidavit of merit could range from $500.00 to $5,000.00. This was well above the $349.00 jury fee we examined and found valid in *Barzellone*.[35] In *Barzellone*, we noted that the $349.00 jury fee was very close to crossing the line of being an unconstitutional burden on accessing the courts,[36] and we held in *Zeier* that at a cost of $500.00 to $5,000.00, an affidavit of merit would clearly cross beyond that line.[37]

¶ 22 *Barzellone* and *Zeier* illustrate that while reasonable fees to defray the cost of litigation are not a violation of the right of citizens to access the courts, the costs associated with obtaining affidavits of merit go beyond the bounds of reasonableness we set in *Barzellone*. As such, they create an impermissible hurdle unconstitutionally restricting the right of citizens to access the courts in violation of art. 2, § 6 of the Oklahoma Constitution.

---

**32.** *Barzellone v. Presley*, 2005 OK 86, ¶ 24, 126 P.3d 588.

**33.** *Barzellone v. Presley*, see note 32, supra at ¶ 39.

**34.** *Zeier v. Zimmer, Inc.*, 2006 OK 98, ¶ 32, 152 P.3d 861. The affidavit of merit provision in *Zeier*, was found at 63 O.S. Supp.2003 § 1–1708.1E (repealed by Okla. Sess. Laws 2009, c. 228, § 87), see note 16, supra.

**35.** *Zeier v. Zimmer, Inc.*, see note 34, supra at ¶ 28.

**36.** *Barzellone v. Presley*, see note 32, supra at ¶ 39.

**37.** *Zeier v. Zimmer, Inc.*, see note 34, supra at ¶ 32.

In *Zeier* we also outlined several of the ills that are a direct result of a statutorily-mandated affidavit of merit provision of the kind at issue here. We held:

> Although statutory schemes similar to Oklahoma's Health Care Act do help screen out meritless suits, the additional certification costs have produced a substantial and disproportionate reduction in the number of claims filed by low-income plaintiffs. The affidavit of merit provisions front-load litigation costs and result in the creation of cottage industries of firms offering affidavits from physicians for a price. They also prevent meritorious medical malpractice actions from being filed. The affidavits of merit requirement obligates plaintiffs to engage in extensive pre-trial discovery to obtain the facts necessary for an expert to render an opinion resulting in most medical malpractice causes being settled out of court during discovery. Rather than reducing the problems associated with malpractice litigation, these provisions have resulted in the dismissal of legitimately injured plaintiffs' claims

¶ 23 We are not persuaded that, in and of itself, the Comprehensive Lawsuit Reform Act of 2009 indigency provision enacted in 12 O.S.2011 § 19(D) serves to fully remedy these ills.[38] The requirements for an indigency exception are set out in 12 O.S. 2011 § 192.[39] It requires a nonrefundable application fee of $40.00. Although it is considerably less than the cost of complying with the affidavit of merit provisions, $40.00 is still a hurdle to the indigent. The fact that the court may defer the fee if it determines that the person does not have the financial resources to pay at the time does not go far enough. Even so, the fee cannot be waived, only deferred to a later date.[40] Access to the courts must be available to all comers through simple and direct means and the right must be administered in favor of justice rather than being bound by technicalities.[41] Claimants may not have their fundamental right of court access withheld merely for nonpayment of some liability or conditioned coercive collection devices.[42]

¶ 24 The Oklahoma Constitution does not anticipate that litigants will be burdened with the entire bill for maintenance of the court system.[43] The Oklahoma courts were never intended to be self-funded, and the increasing degree to which they have become so is disturbing. Despite our holding in *Fent v. State ex. rel. Dep't of Human Services*, 2010 OK 2, 236 P.3d 61, the judicial department of government is burdened with collecting fees for thirty seven entities—only seven of which have a relationship to the third branch of government. The Okla. Const. art. 2, § 6, guarantees the right of individuals to access the courts, and while litigation does not have to be free and entirely at the public expense, at the very least the provision means that justice cannot be for sale. The idea that money cannot be used as a bar to deny justice long predates the Oklahoma Constitution, and is one of the fundamental values of our legal system.[44]

¶ 25 The Magna Carta, one of the oldest progenitors of American legal principles, states: "We will sell to no man, we will not deny or defer to any man, either justice or right." [45] When the cost of obtaining an affidavit of merit in professional negligence

based solely on procedural, rather than substantive, grounds. (Internal citations omitted.)

**38.** Title 12 O.S.2011 § 19(D) provides:
D. A plaintiff in a civil action for professional negligence may claim an exemption to the provisions of this section based on indigency pursuant to the qualification rules established as set forth in Section 4 of this act.
The statute found unconstitutional in Zeier contained no such exemption provision.

**39.** Title 12 O.S.2011 § 192 provides:
A. When a plaintiff requests an indigency exemption from providing an affidavit of merit in a civil action for professional negligence pursuant to Section 2 of this act, such person shall submit an appropriate application to the court clerk, on a form created by the Administrative Director of the Courts, which shall state that the application is signed under oath and under the penalty of perjury and that a false statement may be prosecuted as such. A nonrefundable application fee of Forty Dollars ($40.00) shall be paid to the court clerk at the time the application is submitted, and no application shall be accepted without payment of the fee; except that the court may, based upon the financial information submitted, defer all or part of the fee if the court determines that the person does not have the financial resources to pay the fee at time of application. Any fees collected pursuant to this subsection shall be retained by the court clerk, deposited in the Court Clerk's Revolving Fund, and reported quarterly to the Administrative Office of the Courts.
B. 1. The Supreme Court shall promulgate rules governing the determination of indigency pursuant to the provisions of Section 22 of this act. The initial determination of indigency shall be made by the Chief Judge of the Judicial District or a designee thereof, based on the plaintiff's application and the rules provided herein. 2. Upon promulgation of the rules required by law, the determination of indigency shall be subject to review by the Presiding Judge of the Judicial Administrative District. (Internal citations omitted).

**40.** Title 12 O.S.2011 § 192(A), see note 39, supra.

**41.** *Zeier v. Zimmer, Inc.*, see note 34, supra at ¶ 26; *Woody v. State ex. rel. Dept. of Corrections*, 1992 OK 45, ¶ 10, 833 P.2d 257.

**42.** *Zeier v. Zimmer, Inc.*, see note 34, supra at ¶ 26.

**43.** *Barzellone v. Presley*, see note 32, supra at ¶ 39; *Mehdipour v. State ex rel. Dep't of Corrections*, 2004 OK 19, ¶ 20, 90 P.3d 546.

**44.** See *In re Lee*, 1917 OK 458, 168 P. 53.

**45.** *In re Lee*, see note 44, supra at 9, 168 P. 53 (quoting The Magna Carta, Ch. 39, 1215).

actions is added to the already high and increasingly rising cost of using the court system to resolve disputes, the result is that a line is crossed, and litigation costs go from being merely a hurdle to being an unconstitutional burden on accessing the courts.[46]

## CONCLUSION

¶ 26 Pursuant to art. 2, § 6 of the Oklahoma Constitution, access to the court system is a fundamental right. Likewise, the Okla. Const. art. 5, § 46 prohibition against special laws and the Okla. Const. art. 2, § 6 are intertwined and serve the same ends. This is not new. It has been decided. This is the same issue we addressed in *Zeier*. Unless we ignore the Okla. Const. art. 2, § 6 and art. 5, § 46, the Oklahoma statute defining professional negligence found at 63 O.S. 2011 § 1–1708.1C, and overrule *Zeier v. Zimmer*, 2006 OK 98, 152 P.3d 861, there is but one result we can reach.

¶ 27 Title 12 O.S.2011 § 19 creates a monetary barrier to access the court system, and then applies that barrier only to a specific subclass of potential tort victims, those who are the victims of professional negligence. The result is a law that is unconstitutional both as a special law, and as an undue financial barrier on access to the courts. Although we express no opinion on the viability of the patient's claim, because we hold 12 O.S.2011 § 19 to be unconstitutional, an affidavit of merit is not required. Therefore, we need not address the patient's claim that his res ipsa loquitur argument would circumvent the requirements of 12 O.S.2011 § 19. The district court's order requiring submission of an affidavit of merit is overruled, and this cause is remanded for further proceedings consistent with this opinion.

**CERTIORARI PREVIOUSLY GRANTED; ORDER OF THE DISTRICT COURT OVERRULED; REMANDED FOR FURTHER PROCEEDINGS.**

COLBERT, C.J., REIF, V.C.J., KAUGER, WATT, EDMONDSON, COMBS, GURICH, JJ., concur.

WINCHESTER and TAYLOR, JJ., dissent.

WINCHESTER, J., dissenting:

¶ 1 I respectfully dissent. I cannot agree that 12 O.S.2011, § 19 is unconstitutional as a special law. The majority opinion asserts that this statute "creates a new subclass of tort victims and tortfeasors known as professional tort victims and tortfeasors." Oklahoma's case law already recognizes such a "subclass" of tort law, and that is "malpractice." The rule where medical malpractice against a physician is alleged, whether it is for failure to properly diagnose or treat a patient, is that the physician's negligence must ordinarily be established by expert testimony. *Smith v. Hines*, 2011 OK 51, ¶ 14, 261 P.3d 1129, 1133; *Harder v. F.C. Clinton, Inc.*, 1997 OK 137, ¶ 14, n. 30, 948 P.2d 298,

---

**46.** We are not alone in finding the requirement of an affidavit of merit unconstitutional. In *Putman v. Wenatchee Valley Medical Center, P.S.*, 166 Wash.2d 974, 216 P.3d 374, 376–77 (2009), the Washington Supreme Court found that Washington's certificate of merit requirement unduly burdened the rights of the State's citizens to access the courts, and was therefore unconstitutional. In *Putman*, the court noted that the right to access the courts included the right of discovery authorized by the civil rules, a right interfered with by requiring a certificate of merit prior to discovery.

However, other states such as Georgia have found affidavit of merit requirements constitutional. In *Walker v. Cromartie*, 287 Ga. 511, 696 S.E.2d 654 (2010), the Supreme Court of Georgia upheld an affidavit of merit requirement that applied generally to actions for professional negligence, not just those involving medical professionals. The court found that the requirement

was not a special law merely because indigent defendants may not be able to afford the fees associated with obtaining an expert affidavit, holding that it applied uniformly to any person or entity bringing a lawsuit for professional negligence. However, the court did not address whether the requirement was a special law because it created subclasses of tort claims and victims. Further, Georgia's constitutional prohibition on special laws is not as extensive as Oklahoma's. Its uniformity clause provides:

> Laws of a general nature shall have uniform operation throughout this state and no local or special law shall be enacted in any case for which provision has been made by an existing general law, except that the General Assembly may by general law authorize local governments by local ordinance or resolution to exercise police powers which do not conflict with general laws.

Ga. Const. of 1983, Art. III, Sec. VI, Par. IV(a).

305, n. 30; *Benson v. Tkach*, 2001 OK CIV APP 100, ¶ 10, 30 P.3d 402, 404. The statute merely requires an affidavit at the time of filing. Is it reasonable to require expert testimony in a malpractice case, but forbid the legislature from requiring that an expert submit an affidavit at the front end of a lawsuit? I do not believe it is.

¶ 2 The difference between a standard negligence case and professional malpractice is recognized even in the business law books studied by undergraduates and MBA students.

"If an individual has knowledge or skill superior to that of an ordinary person, the individual's conduct must be consistent with that status. Professionals—including physicians, dentists, architects, engineers, accountants, and lawyers, among others— are required to have a standard minimum level of special knowledge and ability. Therefore, in determining what constitutes reasonable care in the case of professionals, the law takes their training and expertise into account. Thus, an accountant's conduct is judged not by the reasonable person standard, but by the reasonable accountant standard." Kenneth W. Clarkson, Roger LeRoy Miller & Frank B. Cross, *Business Law Text and Cases* 139 (12th ed. 2012).

¶ 3 Georgia's statute requiring an affidavit is not identical to Oklahoma's statute. However, the reasoning of the Supreme Court of Georgia is pertinent to the construction of Oklahoma's statute. Georgia's statute also requires an affidavit from an expert to be filed with the complaint for professional negligence. Its supreme court recognized that the statute itself did not impose a cost or fee for filing an expert affidavit. Neither does § 19. In addressing a due process argument, Georgia's court observed: "The 'costs' appellants object to are created by private actors, not any state actor. Since no state actor has exacted the harm of which appellants complain, the statute does not violate the right to due process." *Walker v. Cromartie*, 287 Ga. 511, 512, 696 S.E.2d 654, 656 (2010). If this Court reasons that the legislature's requirement of an expert affidavit is financially burdensome, is it somehow less burdensome to require an expert to testify to the negligence of the defendant during the trial stage? Case law requires such expert testimony. Surely it is clear that the cost of an expert affidavit is less than the cost of actual expert testimony, both of which are presently required, one by the legislature and the other by this Court.

¶ 4 The majority protests that court costs have reached the tipping point and can go no higher. The legislature has provided, through the statute, for a simple exemption that may be signed by plaintiffs to express to the court their inability to pay for the § 19 affidavit. The Supreme Court is very liberal and experienced in allowing indigent petitions. I see no reason for this Court to fail to recognize an indigent affidavit for professional negligence cases.

¶ 5 Accordingly, I dissent.

TAYLOR, J., dissenting:

¶ 1 Even though I concurred in result in *Zeier v. Zimmer, Inc.*, 2006 OK 98, 152 P.3d 861, I must respectfully dissent from today's pronouncement. There are two major differences in the statute which this Court found unconstitutional in *Zeier* and in title 12, section 19 of the 2011 Oklahoma Statutes which is before us today. First, section 19 is not limited to medical negligence as was the provision in Zeier but includes all professional negligence. 12 O.S.2011, § 19(A)(1). Second, it provides for an indigency exemption to the certificate of merit requirement. *Id.* § 19(D).

¶ 2 In *Zeier*, this Court struck down section 1–1708.1E of the Affordable Access to Health Care Act, 63 O.S.Supp.2003, § 1–1708.1E, which required a certificate of merit only in medical malpractice actions. The Legislature responded to *Zeier* by enacting title 12, section 19 of the Oklahoma Statutes, which expanded the certificate of merit requirement to all professional negligence. Now section 19 is under attack in this appeal as a special law in violation of article 5, section 46 of the Oklahoma Constitution.

¶ 3 In construing section 19, this Court is guided by the overarching principle that every statute is presumed constitutional and

will be upheld until its constitutional invalidity is clearly shown. *Wilson v. Fallin*, 2011 OK 76, ¶ 21, 262 P.3d 741, 748. Further, this Court is to presume that the Legislature has not done a vain and useless act. *Surety Bail Bondsmen of Okla., Inc. v. Insurance Comm'r*, 2010 OK 73, ¶ 26, 243 P.3d 1177, 1185. Following these principles leads to the conclusion that the Legislature did not intend the term "professional negligence" to have the identical meaning as "medical liability." Rather, consistent with these principles, section 19 must be construed as expanding the class to which the certificate of merit requirement applies to include all negligence actions against any professional. Further, this Court itself has taken a more expansive approach by using the term "professional negligence" in reference to actions against lawyers, *Leak–Gilbert v. Fahle*, 2002 OK 66, 55 P.3d 1054; realtors, *Rice v. Patterson*, 1993 OK 103, 857 P.2d 71; and engineers, *Samuel Roberts Noble Foundation, Inc. v. Vick*, 1992 OK 140, 840 P.2d 619.

¶ 4 It would certainly have been a vain and useless act for the Legislature to enact a statutory provision that this Court had determined to be unconstitutional only three years earlier. By expanding the class of torts requiring a certificate of merit to professional negligence, the Legislature remedies the concerns this Court expressed in *Zeier* regarding section 1–1708.1E of the Affordable Access to Health Care Act. I would find that title 12, section 19 of the Oklahoma Statutes does not offend article 5, section 46 of the Oklahoma Constitution.

¶ 5 I would likewise find that section 19 does not offend article 2, section 6 of the Oklahoma Constitution. The impediment that this Court found to the cost of procuring an expert's opinion before trial, the Legislature addressed in title 12, section 19(D) by providing for an indigency exemption and leaving the Judicial Branch with authority to define indigency. *See* 20 O.S.2011, § 56. Title 12, section 192 imposes a nonrefundable application fee of $40.00 on a plaintiff seeking an indigency exemption but this fee can be deferred. If the $40 fee is a constitutional impediment, then striking only the $40.00 fee for the indigency exemption as violative of article 2, section 6, rather than striking down the certificate of merit requirement, gives the appropriate measure of deference to the Legislature. There are other procedures in place to address any impediment of access to the courts: this Court could define indigency in such a manner as to alleviate any monetary obstruction that the certificate of merit requirement creates.

¶ 6 In deference to the Legislature and the rules of statutory construction, I would construe title 12, section 19 in a way to find that it does not violate article 5, section 46 of the Oklahoma Constitution. I would also exercise this Court's power in as narrow a swath as possible rather than the most extensive.