2013 OK 37

**Carol A. DOUGLAS, Administratrix of the Estate of Richard Lee Douglas, deceased, Plaintiff–Petitioner,**

v.

**COX RETIREMENT PROPERTIES, INC., an Oklahoma Corporation, Defendant–Respondent.**

**No. 110270.**

Supreme Court of Oklahoma.

June 4, 2013.

Steven R. Hickman, Frasier, Frasier & Hickman, LLP, Tulsa, Oklahoma, Attorney for Plaintiff–Petitioner.

Michael Carr, Anne Cardea, Holden & Carr, Tulsa, Oklahoma, Attorneys for Defendant–Respondent.

Randy Lewin, Richards & Connor, Tulsa, Oklahoma, Attorney for Amicus Curiae Oklahoma Association of Defense Counsel.

**TRIAL COURT'S ORDER DISMISSING CASE IS REVERSED; CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH TODAY'S PRONOUNCEMENT**

GURICH, J.

### Facts & Procedural History

¶1 On April 2, 2009, Richard Douglas was admitted to the Defendant's rehabilitative care center for extended care. Douglas remained at the facility for approximately 21 days and was discharged on April 23, 2009. He died a short time later on May 12, 2009. The decedent's estate filed a wrongful death action in Tulsa County against the Defendant, alleging Douglas died as a result of the facility's negligent care and treatment.

¶2 Defendant moved to dismiss the case for Plaintiff's failure to comply with 12 O.S. Supp.2009 § 19. Section 19 was enacted in 2009 as part of H.B. 1603, which is commonly known as the Comprehensive Lawsuit Reform Act of 2009. Plaintiff responded to the motion to dismiss, arguing that the CLRA of 2009 was unconstitutional logrolling in violation of the single-subject rule of Article 5, § 57 of the Oklahoma Constitution.[1] The trial court granted Defendant's Motion to Dismiss and certified the dismissal order

---

1. Today this Court also issued an opinion in *Timothy Wall v. John S. Marouk, D.O.*, 2013 OK 36, 302 P.3d 775, 2013 WL 2407160, which disposes of Plaintiff's additional argument that the requirement for filing affidavits in malpractice cases was conclusively decided by this Court in *Zeier v. Zimmer*, 2006 OK 98, 152 P.3d 861. Therefore, we will not address the issue in this opinion.

for immediate review.[2] Plaintiff filed a Petition for Certiorari on January 9, 2012, and we granted review on February 14, 2012.

### Standard of Review

¶3 "In considering a statute's constitutionality, courts are guided by well-established principles and a heavy burden is cast on those challenging a legislative enactment to show its unconstitutionality." *Thomas v. Henry*, 2011 OK 53, ¶8, 260 P.3d 1251, 1254 (citing *Fent v. Okla. Capitol Improvement Auth.*, 1999 OK 64, ¶3, 984 P.2d 200, 204). "Every presumption is to be indulged in favor of the constitutionality of a statute." *Id.* "It is also firmly recognized that it is not the place of this Court, or any court, to concern itself with a statute's propriety, desirability, wisdom, or its practicality as a working proposition." *Fent*, 1999 OK 64, ¶4, 984 P.2d 200, 204. "A court's function, when the constitutionality of a statute is put at issue, is limited to a determination of the validity or invalidity of the legislative provision and a court's function extends no farther in our system of government." *Id.*

### Analysis

¶4 The issue before us is the applicability of the single-subject rule of Article 5, § 57 of the Oklahoma Constitution to H.B. 1603. Article 5, § 57 of the Oklahoma Constitution provides: "Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title...." Okla. Const. art. 5, § 57. This provision is commonly known as the single-subject rule. The purposes of the single-subject rule are to ensure the legislators or voters of Oklahoma are adequately notified of the potential effect of the legislation and to prevent logrolling. *Nova Health Sys. v. Edmondson*, 2010 OK 21, 233 P.3d 380. Logrolling is the practice of ensuring the passage of a law by creating one choice in which a legislator or voter is forced to assent to an unfavorable provision to secure passage of a favorable one, or conversely, forced to vote against a favorable provision to ensure an unfavorable provision is not enacted. *Id.*

¶5 This Court has long rejected a broad, expansive approach to the single-subject rule. *Campbell v. White*, 1993 OK 89, ¶14, 856 P.2d 255, 258. In *Campbell*, we stated that the Legislature's "skillful drafting of a broad topic" defeats the purpose of the single-subject rule. *Id.* We reaffirmed such an approach in *Weddington v. Henry*, 2008 OK 102, 202 P.3d 143, where we struck down a bill whose subject was "uniform laws." In *Fent v. State ex rel. Okla. Capitol Improvement Auth.*, 2009 OK 15, ¶20, 214 P.3d 799, 806, *Nova Health Systems*, 2010 OK 21, 233 P.3d 380, and *Thomas*, 2011 OK 53, ¶27, 260 P.3d at 1260, we continued to reject a broad, expansive approach to the single-subject rule.

¶6 In *Thomas* we reiterated that Oklahoma adheres to the germaneness test.[3] *Id.* ¶26, 260 P.3d at 1260. The most relevant question under such an analysis is whether a voter, or legislator, is able to make a choice without being misled and is not forced to choose between two unrelated provisions contained in one measure. *Id.* The question is

2. Ordinarily, an order dismissing a case is a final, appealable order unless the trial court grants leave to amend the petition to cure the defect. *Kelly v. Abbott*, 1989 OK 124, ¶10, 781 P.2d 1188, 1191. If leave to amend is granted, the order dismissing the case is an interlocutory order and does not become final until the petition is not amended within the time set by the trial court. *Id.* In this case, the trial court dismissed the action but gave the Plaintiff 30 days to file the affidavit required by 12 O.S. Supp. 2009 § 19. The trial court also certified the order for immediate review and ordered: "If Plaintiff chooses to file a certified interlocutory appeal of this Order, and not file the required affidavit, then the proceedings shall be stayed pending disposition of the interlocutory appeal by separate order to be filed by this Court."

Journal Entry Sustaining Defendant's Motion to Dismiss at 2. Rather than filing the affidavit, Plaintiff appealed the order and filed a Petition for Certiorari to Review Certified Interlocutory Order with this Court.

3. Other opinions discussing the single-subject rule include: *Nova Health Sys.*, 2010 OK 21, 233 P.3d 380; *Fent*, 2009 OK 15, 214 P.3d 799; *Weddington*, 2008 OK 102, 202 P.3d 143; *Fent v. Office of State Finance*, 2008 OK 2, 184 P.3d 467; *In re Initiative Petition No. 382, State Question No. 729*, 2006 OK 45, 142 P.3d 400; *Edmondson v. Pearce*, 2004 OK 23, 91 P.3d 605; *Morgan v. Daxon*, 2001 OK 104, 49 P.3d 687; *Campbell*, 1993 OK 89, 856 P.2d 255; *Johnson v. Walters*, 1991 OK 107, 819 P.2d 694.

not how similar two provisions in a proposed law are, but whether it appears that the proposal is misleading or that the provisions in the proposal are so unrelated that those voting on the law would be faced with an all-or-nothing choice. *Id.* The purpose is not to hamper legislation but to prevent the Legislature from making a bill "veto proof" by combining two totally unrelated subjects in one bill. *Id.* If a bill contains multiple provisions, the provisions must reflect a common, closely akin theme or purpose. *Id.* ¶ 27, 260 P.3d at 1260.

¶ 7 H.B. 1603 contains 90 sections, encompassing a variety of subjects that do not reflect a common, closely akin theme or purpose. The first 24 sections of H.B. 1603 amend and create new laws within our civil procedure code found in Title 12. Many of these provisions have nothing in common. For example, Section 3 purports to give a trial court the authority to transfer a case to another state. Section 10 creates a law that assists the Oklahoma Healthcare Authority in collecting refunds for the Medicaid program. In Section 13, the Legislature adopts a portion of the federal civil procedure code to control a state court action.

¶ 8 Of the remaining 66 sections of H.B. 1603, 45 sections create entirely new Acts, which have nothing in common with each other, including The Uniform Emergency Volunteer Health Practitioners Act, The Common Sense Consumption Act, The Asbestos and Silica Claims Priorities Act, The Innocent Successor Asbestos–Related Liability Fairness Act, and The School Protection Act. For example, sections 43 through 46 create The Common Sense Consumption Act. The Act creates immunity from suit **only** for entities defined under the federal Food, Drug, and Cosmetic Act, and by its terms

eliminates remedies for certain injured consumers. Sections 54 through 65 create the Asbestos and Silica Claims Priorities Act. Section 58(A) limits a physician's ability to testify in asbestos and silica litigation based upon his or her education, training, and experience, and instead requires adherence to the AMA Guides to the Evaluation of Permanent Impairment (5th Edition) (2000).

¶ 9 Other dissimilar sections of H.B. 1603 amend the Mandatory Seat Belt Use Act and the Oklahoma Livestock Activities Liability Limitation Act, limit the liability of firearm manufacturers, and amend existing laws regarding school discipline. H.B. 1603 also creates a new law that a school district representative may not conduct or preside as the hearing officer or judge at a due process hearing and then attend, advise, or influence an executive session of the school board.[4]

¶ 10 This Court finds the Legislature's use of the broad topic of lawsuit reform does not cure the bill's single-subject defects. *Campbell,* 1993 OK 89, ¶ 14, 856 P.2d at 258. Although the Defendant argues the CLRA of 2009 does not constitute logrolling because the provisions within it are not so misleading as to create for a legislator an all-or-nothing choice, we find the provisions are so unrelated that those voting on the law were faced with an all-or-nothing choice to ensure the passage of favorable legislation.

¶ 11 Unlike in *Thomas,* where the Court severed the offending provision of the Oklahoma Taxpayer and Citizens Protection Act of 2007, H.B. 1603 encompasses so many different subjects that severance is not an option.[5] It would be both dangerous and difficult for this Court to engage in the exercise of severance in this case. By picking and choosing which provisions relate to law-

---

4. The Defendant argues that this section, section 74, was repealed, so H.B. 1603 is cured of its single-subject defects. Section 74 is not the only section that violates the single-subject rule. However, even if it were, it has not been repealed as the Defendant claims. Section 74 was passed in two different bills in the 2009 session— H.B. 1603 (CLRA of 2009) and H.B. 1598. *H.B. 1598* was repealed so as to prevent duplicate statutes. Section 74, as it was enacted in H.B. 1603, remains intact at 70 O.S.2011 § 6–101.7 and has not been repealed.

5. Although the bulk of the Act in *Thomas* dealt with discouraging illegal immigration, only one section was found to violate the single-subject rule. *Thomas,* 2011 OK 53, ¶ 31, 260 P.3d at 1262. The bill had 13 sections, and this Court found Section 13 of the bill, which sought to amend 70 O.S. Supp.2006 § 3242(A)(1) and (2) so as to deny resident tuition for higher education to those who successfully completed the GED examination, did not relate to the common theme of discouraging illegal immigration and should be severed. *Id.* ¶ 31, 260 P.3d at 1262.

suit reform and which do not, this Court would essentially become the policy-maker. Policy-making is the job of the Legislature. And although the dissenters argue we should sever the unconstitutional portions of this bill, the separate writing does not provide an analysis of how severance should be accomplished. Additionally, unlike in *Thomas*, were we to sever all the invalid portions of H.B. 1603, we could not presume the Legislature would have enacted the remaining provisions of the bill without the voided provisions.[6]

### Conclusion

¶ 12 This is not the first time we have invalidated a bill in its entirety for violation of the single-subject rule.[7] Although we are mindful of the practical consequences of today's decision, we will not sit by and ignore violations of our Constitution. The Legislature should be well aware of the single-subject requirements of the Oklahoma Constitution. We do not doubt that tort reform is an important issue for the Legislature. **But the constitutional infirmity of logrolling, which is the basis of this opinion, can only be corrected by the Legislature by** *considering the acts* **within the CLRA of 2009** *separately.*[8] We hold that H.B. 1603, commonly known as the Comprehensive Lawsuit Reform Act of 2009, violates the single-subject rule of Article 5, § 57 of the Oklahoma Constitution. The bill is unconstitutional and void in its entirety.

6. 75 O.S. § 11a(1) reads:
   In the construction of the statutes of this state, the following rules shall be observed:
   1. For any act enacted on or after July 1, 1989, unless there is a provision in the act that the act or any portion thereof or the application of the act shall not be severable, the provisions of every act or application of the act shall be severable. If any provision or application of the act is found to be unconstitutional and void, the remaining provisions or applications of the act shall remain valid, unless the court finds:
   a. the valid provisions or application of the act are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or
   b. the remaining valid provisions or applications of the act, standing alone, are incomplete

**TRIAL COURT'S ORDER DISMISSING CASE IS REVERSED; CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH TODAY'S PRONOUNCEMENT**

¶ 13 COLBERT, C.J., REIF, V.C.J., WATT, EDMONDSON, COMBS, and GURICH, JJ., concur.

¶ 14 KAUGER, J., (by separate writing) concurs specially.

¶ 15 WINCHESTER, J., (by separate writing) and TAYLOR, J. (joins WINCHESTER) dissent.

KAUGER, J. concurring specially.

### I.

### INTRODUCTION

¶ 1 The issue of the legislative amendment to 12 O.S.2011 § 19 in the aftermath of *Zeier v. Zimmer*, 2006 OK 98, 152 P.3d 861, was resolved in *Timothy Wall v. John S. Marouk, D.O.*, 2013 OK 36, 302 P.3d 775, 2013 WL 2407160, which we promulgated today. After we held it to be unconstitutional, I had hoped that if only a small number of sections of the CLRA were infirm and unrelated, they could safely be severed. However, the bill is simply too large, and attempts to address too many subjects, to be reconciled with the requirements of the Okla. Const., art. 5, § 57.[1]

and are incapable of being executed in accordance with the legislative intent.

7. *See Nova Health Sys.*, 2010 OK 21, 233 P.3d 380 (finding that S.B. 1878, which comprised portions of five separate bills and involved multiple subjects concerning freedom of conscience, obviously violated the single-subject rule and was void in its entirety); *Weddington*, 2008 OK 102, 202 P.3d 143 (finding that S.B. 1708, which related to uniform laws, was facially contrary to Article 5, § 57 and void in its entirety).

8. Although our opinion in *Nova Health Systems*, 2010 OK 21, 233 P.3d 380, was decided after the CLRA of 2009 was passed, in that case we explicitly told the Legislature that if it believed the subjects involved in a particular bill were important, it should enact those subjects in separate bills. We reiterate that idea today.

## II.

### SECTION 74 OF THE CLRA VIOLATES THE OKLA. CONST., ART. 5, § 57.

¶ 2 The respondents have conceded that 2009 Okla. Session. Laws ch. 228, sec. 74, might have constituted logrolling. Petitioner charges that because it places limits on a lawyer's representation in school board hearings on teacher terminations, it violates the single subject rule, and renders the CLRA an unconstitutional violation of Okla. Const., art. 5, § 57.[2]

¶ 3 Respondent, however, argues that § 74 of the CLRA was subsequently repealed, and therefore no longer constitutes a part of the corpus of the legislation contained within the CLRA.[3] This argument is also made by the Oklahoma Association of Defense Counsel in its Amicus Curiae brief:

The only other section of the Act cited by Petitioner is the portion banning attorneys in certain situations from participating in school employee termination hearings. This section of the law has indisputably been repealed. It is no longer part of the Act, so any question of whether this section made the law unconstitutional is moot.[4]

Respondent made the same point during the August 30, 2011, hearing on its motion to dismiss, stating that "[t]he provision regarding teachers has been-or, excuse me, regarding due process hearing for teachers has been repealed.... Clearly that argument goes by the wayside." [5] The arguments are unconvincing because the language of § 74 remains part of the Oklahoma Statutes. It is found at 70 O.S.2011 § 6–101.7.[6]

1. The Okla. Const., Art. 5, § 57 provides:
   Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length: Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the laws as may not be expressed in the title thereof.

2. 2009 Okla. Session. Laws ch. 228, sec. 74 provides:
   SECTION 74.   NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6–101.7 of Title 70, unless there is created a duplication in numbering, reads as follows:
   An attorney, representative, or other designee of the school district who has represented or represents a school district or the administration of a school district at a hearing held for the purpose of affording due process rights and requirements for an administrator as provided for in Section 6–101.13 of Title 70 of the Oklahoma Statutes, a teacher as provided for in Section 6–101.26 of Title 70 of the Oklahoma Statutes, or a support employee as provided for in Section 6–101.46 of Title 70 of the Oklahoma Statutes or who has been involved or participated in any prehearing actions of the school district with respect to a recommendation for the termination of employment or nonreemployment of an administrator, teacher, or support employee shall not:
   1. Conduct or preside as the hearing officer or judge at a due process hearing or hearings; and

2. Attend, advise at, or in any way influence an executive session of the school district board of education that is held in conjunction with a due process hearing or hearings if the attorney, representative, or other designee of the school district conducted or presided over the due process hearing or hearings as the hearing officer or judge.

3. Respondent's Answer Brief, p. 2

4. Amicus Curiae Brief of Oklahoma Association of Defense Counsel, p. 3.

5. Transcript of Proceedings had on August 11, 2011 in the District Court of Tulsa County, 5:13–15.

6. Title 70 O.S.2011 § 6–101.7 provides:
   An attorney, representative, or other designee of the school district who has represented or represents a school district or the administration of a school district at a hearing held for the purpose of affording due process rights and requirements for an administrator as provided for in Section 6–101.13 of Title 70 of the Oklahoma Statutes, a teacher as provided for in Section 6–101.26 of Title 70 of the Oklahoma Statutes, or a support employee as provided for in Section 6–101.46 of Title 70 of the Oklahoma Statutes or who has been involved or participated in any prehearing actions of the school district with respect to a recommendation for the termination of employment or nonreemployment of an administrator, teacher, or support employee shall not:
   1. Conduct or preside as the hearing officer or judge at a due process hearing or hearings; and
   2. Attend, advise at, or in any way influence an executive session of the school district board of

## III.

## OTHER PROVISIONS OF THE CLRA ALSO VIOLATE THE OKLA CONST., ART. 5, § 57.

¶ 4 If § 74 had been repealed or was by itself severable from the CLRA,[7] it is not the only offending provision in the CLRA that renders the Act itself in violation of the Okla. Const., art. 5, § 57. In addition to changes to the civil procedure code, 12 O.S. § 1 *et seq.*, H.B. 1603 also creates entirely new Acts in other titles, such as the Uniform Emergency Volunteer Health Practitioners Act, The Common Sense Consumption Act, The Asbestos and Silica Claims Priorities Act, The Innocent Successor Asbestos–Related Liability Fairness Act, and the School Protection Act.

¶ 5 For example, §§ 31–41 of the CLRA create the Uniform Emergency Volunteer Health Practitioners Act.[8] Sections 33–35 detail the creation of a registration system for volunteer health practitioners who will provide health or veterinary services in the state in the event of an emergency declaration.[9] Section 35, in particular, details the requirements a registration system must fulfill to satisfy the new law.[10] An examination of §§ 31–41 reveals a comprehensive new set of laws for new categories of volunteer emergency workers, with no basis in lawsuit reform or civil procedure.

education that is held in conjunction with a due process hearing or hearings if the attorney, representative, or other designee of the school district conducted or presided over the due process hearing or hearings as the hearing officer or judge.

7. Respondent asserts that even if Section 74, or any other part of the CLRA, were unconstitutional, they could be severed, allowing the CLRA itself to remain valid and in force. Respondent's Reply Brief, p. 5. In *Thomas v. Henry*, 2011 OK 53, ¶ 31, 260 P.3d 1251, we held that severability was a possibility where the valid provisions of an act were not essentially and inseparably connected with and dependent on the invalid portion.

8. 2009 Okla. Session. Laws ch. 228, secs. 31–42.

9. 2009 Okla. Session. Laws ch. 228, secs. 33–35, see note 13, infra.

10. 2009 Okla. Session. Laws ch. 228, secs. 33–35 provides:

SECTION 35. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 684.18 of Title 63, unless there is created a duplication in numbering, reads as follows:
A. To qualify as a volunteer health practitioner registration system, a system must:
1. Accept applications for the registration of volunteer health practitioners before or during an emergency;
2. Include information about the licensure and good standing of health practitioners which is accessible by authorized persons;
3. Be capable of confirming the accuracy of information concerning whether a health practitioner is licensed and in good standing before health services or veterinary services are provided under the Uniform Emergency Volunteer Health Practitioners Act; and
4. Meet one of the following conditions:
a. be an emergency system for advance registration of volunteer health practitioners established by a state and funded through the Health Resources Services Administration under Section 319I of the Public Health Services Act, 42 U.S.C., Section 247d–7b,
b. be a local unit consisting of trained and equipped emergency response, public health, and medical personnel formed pursuant to Section 2801 of the Public Health Services Act, 42 U.S.C., Section 300hh,
c. be operated by a:
(1) disaster relief organization,
(2) licensing board,
(3) national or regional association of licensing boards or health practitioners,
(4) health facility that provides comprehensive inpatient and outpatient health-care services, including a tertiary care and teaching hospital, or
(5) governmental entity, or
d. be designated by the State Department of Health as a registration system for purposes of the Uniform Emergency Volunteer Health Practitioners Act.
B. While an emergency declaration is in effect, the State Department of Health, a person authorized to act on behalf of the Department, or a host entity may confirm whether volunteer health practitioners utilized in this state are registered with a registration system that complies with subsection A of this section. Confirmation is limited to obtaining identities of the practitioners from the system and determining whether the system indicates that the practitioners are licensed and in good standing.
C. Upon request of a person in this state authorized under subsection B of this section, or a similarly authorized person in another state, a registration system located in this state shall notify the person of the identities of volunteer health practitioners and whether the practitioners are licensed and in good standing.
D. A host entity shall not be required to use the services of a volunteer health practitioner even if the practitioner is registered with a registration system that indicates that the practitioner is licensed and in good standing.

¶ 6 Other provisions are indicative of the same fatal flaws. Sections 75–83, creating the School Protection Act, create a new criminal offense for making false accusations of criminal conduct against an education employee.[11] It is difficult to argue that modifications to the criminal code are germane to the reform of civil procedure. Even if the stated goal is to prevent false accusations, the connection is simply too tenuous to say that the School Protection Act shares the same subject as something like the Uniform Emergency Volunteer Health Practitioners Act. They are not germane to each other, other CLRA provisions, or the subject of the bill, civil procedure.

¶ 7 The respondent has failed to address any of the other disparate provisions of the CLRA, beyond § 74, in its reply brief. During the hearing held on August 30, 2011, the Respondent mentioned [12] § 25 of the CLRA, which created a Health Care Indemnity Fund Task Force.[13] Respondent argued that the court or settled and approved by the court in professional negligence cases against physicians as defined in subsection I of Section 24 of this act. The task force shall study the following issues:

1. Funding, expenses and investments;
2. Capping the fund at a rate of Twenty Million Dollars ($20,000,000.00) annually;
3. Limiting damage award payments from the fund to:
a. professional negligence cases against physicians where the noneconomic damage cap has been removed, and
b. only that amount of damages that exceed the noneconomic damage cap of Four Hundred Thousand Dollars ($400,000.00) per occurrence;
4. Purchase of reinsurance;
5. Professional liability insurance coverage requirements, in an amount of no less than One Million Dollars ($1,000,000.00) for physicians;
6. Qualifications for coverage under the fund;
7. Applicant, compliance, payment and rating procedures; and
8. Any other issues necessary for creating a health care indemnity fund.
C. The task force shall be composed of eight (8) members as follows:
1. The Oklahoma Insurance Commissioner or designee;
2. Three members appointed by the Governor;
3. Two members appointed by the President Pro Tempore of the Senate, one of whom shall be a physician; and
4. Two members appointed by the Speaker of the House of Representatives, one of whom shall be a physician.
D. The task force may meet as often as necessary to perform the duties imposed upon it. Members of the task force shall receive no compensation for their services, but shall receive travel reimbursement as follows:
1. Legislative members of the task force shall be reimbursed for necessary travel expenses incurred in the performance of their duties in accordance with the provisions of Section 456 of Title 74 of the Oklahoma Statutes; and
2. Nonlegislative members of the task force shall be reimbursed for necessary travel expenses incurred in the performance of their duties in accordance with the State Travel Reimbursement Act.

11. 2009 Okla. Session. Laws ch. 228, secs. 75–83. Specifically, 2009 Okla. Session. Laws ch. 228, sec. 78 provides:
SECTION 78. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 6–143 of Title 70, unless there is created a duplication in numbering, reads as follows:
A. Except as otherwise provided in this section, any person eighteen (18) years of age or older who acts with specific intent in making a false accusation of criminal activity against an education employee to law enforcement authorities or school district officials, or both, shall be guilty of a misdemeanor and, upon conviction, punished by a fine of not more than Two Thousand Dollars ($2,000.00).
B. Except as otherwise provided in this section, any student between seven (7) years of age and seventeen (17) years of age who acts with specific intent in making a false accusation of criminal activity against an education employee to law enforcement authorities or school district officials, or both, shall, upon conviction, at the discretion of the court, be subject to any of the following:
1. Community service of a type and for a period of time to be determined by the court; or
2. Any other sanction as the court in its discretion may deem appropriate.
C. The provisions of this section shall not apply to statements regarding individuals elected or appointed to an educational entity.
D. This section is in addition to and does not limit the civil or criminal liability of a person who makes false statements alleging criminal activity by another.

12. Transcript of Proceedings had in the District Court of Tulsa County on August 30, 2011, at 5:15–19.

13. 2009 Okla. Session. Laws ch. 228, sec. 25 provides:
SECTION 25. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 2211 of Title 36, unless there is created a duplication in numbering, reads as follows:
A. There is hereby created the "Health Care Indemnity Fund Task Force".
B. The task force shall study a mechanism for creating a health care indemnity fund for purposes of paying a portion of damages awarded by

this particular section was no longer a problem because the statute had already lapsed by its own terms.[14] Presumably Respondent was referring to the fact that the provision required the task force to report its findings and recommendations to the President Pro Tempore of the Senate and the Speaker of the House of Representatives by May 1, 2011, after which its purpose would be fulfilled.[15]

¶ 8 The various pieces of the CLRA do not reflect a common, closely akin theme or purpose.[16] The application of broad, sweeping categories such as civil procedure and lawsuit reform do not change the fact that the Constitution will not allow unrelated legislation to be included in a single enactment simply by the skillful drafting of a broad topic.[17] In *Nova Health Systems v. Edmondson*, 2010 OK 21, ¶ 3, 233 P.3d 380, we explained the rational for the single subject rule. We said:

> ... Each subject brought into the deliberation of the legislative department of the government is to be considered and voted on singly, without having associated with it any other measure to give it strength. Experience had shown that measures having no common purpose, and each wanting sufficient support on its merits to secure its enactment, have been carried through legislative bodies and enacted into laws, when neither measure could command or merit the approval of a majority of that body.

### IV.

### HISTORY OF THE SINGLE SUBJECT RULE

¶ 9 Addressing the violation of the single subject rule is a recurring theme in our jurisprudence. At the time of our 2010 holding in *Nova Health Systems v. Edmondson*, 2010 OK 21, 233 P.3d 380, we had addressed the single subject rule at least seven times over the previous two decades, and four times in three years, in the following cases: *Fent v. State of Oklahoma ex. rel. Oklahoma Capitol Improvement Authority*, 2009 OK 15, ¶¶ 10–23, 214 P.3d 799; *Fent v. State ex. rel. Office of State Finance*, 2008 OK 2, ¶ 30, 184 P.3d 467; *Weddington v. Henry*, 2008 OK 102, ¶ 1, 202 P.3d 143; *In Re Initiative Petition No. 382, State Question No. 729*, 2006 OK 45, ¶ 18, 142 P.3d 400; *Morgan v. Daxon*, 2001 OK 104, ¶ 1, 49 P.3d 687; *Campbell v. White*, 1993 OK 89, ¶ 20, 856 P.2d 255.

¶ 10 One of the main reasons the logrolling continues to be a problem is the consolidation of multiple unrelated bills together. This was the problem in *Nova*, where five disparate bills related tangentially to freedom of conscience were consolidated together into one bill.[18] If these individual bills, each in themselves concerning only one subject, had been left unconsolidated, then they would likely not have triggered the anti-logrolling provisions of the Oklahoma Constitution.

¶ 11 For over a hundred years, this Court has considered the provisions of the Okla. Const., art. 5, § 57. In 1908, in *In Re County Comm'rs of Counties Comprising Seventh Judicial Dist.*, 1908 OK 207, ¶¶ 4–5, 98 P. 557, this Court enforced the requirement of the Oklahoma Constitution that bills shall embrace but one subject.[19]

E. The task force shall be authorized to hire actuarial or any other professional services necessary to perform the duties imposed on it.
F. A quorum of the task force shall be required for any final action, and shall report its findings and recommendations to the President Pro Tempore of the Senate and the Speaker of the House of Representatives not later than May 1, 2011.

14. Transcript of Proceedings had in the District Court of Tulsa County on August 30, 2011, at 5:15–19.

15. 2009 Okla. Session. Laws ch. 228, sec. 25(F).

16. *Thomas v. Henry*, see note 7, supra at ¶ 27.

17. *Campbell v. White*, 1993 OK 89, ¶ 14, 856 P.2d 255.

18. *Nova Health Systems v. Edmondson*, 2010 OK 21, ¶ 3, 233 P.3d 380.

19. In *In Re County Comm'rs Comprising Seventh Judicial Dist.*, 1908 OK 207, ¶¶ 4–5, 98 P. 557, we held that:

> [t]he abuses which called such provision into existence are clearly understood, and are twofold. Each subject brought into the deliberation of the legislative department of the government is to be considered and voted on singly, without having associated with it any other measure to give it strength. Experience

¶ 12 The real problem with logrolling is that it creates a situation where there is only the illusion of choice, where various legislative proposals are amalgamated into a statutory chimera in order to force individual Legislators to vote for all measures if they wish one to see the light of day. It is easy to see why the issue might be confusing. Because the United States Constitution does not have a provision prohibiting logrolling, Congress is permitted to combine various disparate subjects together in one bill and frequently does so. The Oklahoma Legislature may not.

¶ 13 In *Campbell v. White,* 1993 OK 89, 856 P.2d 255, this Court found unconstitutional two bills which contained multiple subjects in violation of the Okla. Const., art. 5, § 56.[20] We stressed the important nature of the Oklahoma Constitution's anti-logrolling provisions and emphasized the reasons for such provisions, which are designed to prevent the enactment of legislation through the combination of unpopular causes with popular legislation on an entirely different subject.[21] We further stated that not only does the single subject rule prohibit log-rolling, it also enables the public and the Legislature to understand the scope and effect of pending legislation.[22]

¶ 14 Since *Campbell,* we have repeatedly addressed violations of the single subject rule. In *Morgan v. Daxon,* 2001 OK 104, 49 P.3d 687, the Court found a reconciliation bill unconstitutional for violating the anti-logroll-ing provisions of the Okla. Const., art. 5, §§ 56 and 57. Again, we addressed the application of the single subject rule in *In Re Initiative Petition No. 382, State Question No. 729,* 2006 OK 45, 142 P.3d 400. In that case, we responded to a challenge that an initiative petition addressing the power of eminent domain as well as the enforcement of zoning laws violated the single subject requirement of the Okla. Const., art. 5, § 57.[23]

¶ 15 Proponents of Initiative Petition No. 382 argued that previous decisions of this court implied adoption of an expansive test of germaneness that is broad, liberal, and satisfied by all proposed laws but those with the most scattered and disconnected provisions.[24] We explained that such a reading is not consistent with the requirements of Okla. Const., art. 5, § 57, and held that:

... seeming inconsistencies in our single subject rule jurisprudence melt away when one understands that each case was decided by determining whether the purposes behind the rule were offended. Whether we explicitly stated it or not, the issue is not how similar or "related" any two provisions in a proposed law are, or whether one can articulate some rational connection between the provisions of a proposed law, but whether it appears that either the proposal is misleading or provisions in the proposal are so unrelated that many of those voting on the law would be faced

had shown that measures having no common purpose, and each wanting sufficient support on its merits to secure its enactment, have been carried through legislative bodies and enacted into laws. When [sic] neither measure could command or merit the approval of a majority of that body.
The other abuse against which this provision was levied was to prevent matters foreign to the main objects of a bill from finding their way into such enactment surreptitiously.

20. The Okla. Const., art. 5, § 56 concerns general appropriations bills, but contains a single subject provision similar in nature to Okla. Const., art. 5, § 57. The Okla. Const., art. 5, § 56 provides:
§ 56. General appropriation bills-Salaries-Separate appropriation bills.
The general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the State, and for interest on the public debt. The salary of no officer or employee of the State, or any subdivision thereof, shall be increased in such bill, nor shall any appropriation be made therein for any such officer or employee, unless his employment and the amount of his salary, shall have been already provided for by law. All other appropriations shall be made by separate bills, each embracing but one subject.

21. *Campbell v. White,* see note 17, supra at ¶ 7.

22. *Campbell v. White,* see note 17, supra.

23. *In Re Initiative Petition No. 382, State Question No. 729,* 2006 OK 45, ¶ 10–12, 142 P.3d 400.

24. *In Re Initiative Petition No. 382, State Question No. 729,* see note 23, supra at ¶ 13.

with an unpalatable all-or-nothing choice.[25]

¶ 16 In *Fent v. State ex rel. Office of State Finance*, 2008 OK 2, 184 P.3d 467, the petitioner argued that an appropriations bill violated the single subject rule because it made multiple special appropriations to several different subjects or objects of state government. We rejected the notion that the subject of the legislation should be tested by broad, expansive themes such as allocating surplus or managing accounts, and once again affirmed the use of the germaneness test we put forward in *Campbell*.[26]

¶ 17 A year later, in *Fent v. State ex rel. Oklahoma Capitol Improvement Authority*, 2009 OK 15, 214 P.3d 799, we again addressed violations of the single subject rule, and discussed our previous cases on the subject. We rejected any kind of broad, expansive, and thematic based approach in favor of measuring the germaneness of various bill provisions to each other.[27] We reiterated that while bond measures do not necessarily have to be brought individually, at the very least they must have some semblance of relation to each other and must not be misleading or provide the voter or legislator with an all or nothing choice.[28]

## V.

## GUIDELINES

¶ 18 Perhaps guidelines with regard to the single subject provision of Okla. Const., art. 5, § 57 will prevent this Court from having to revisit the issue. This Court interprets the single subject rule using a "germaneness" test.[29] The single subject rule requires the following:

• The provisions of a bill must be related to a single subject. The provisions are related to a single subject if the provisions are germane, relative, and cognate to a readily apparent common theme and purpose.[30]

• A voter or a legislator must be able to make a choice about voting for a bill without being misled, and may not be forced to choose between two unrelated provisions contained in one measure in order to embrace the one they support.[31]

• Legislation may not be made "veto proof" by combining two totally unrelated subjects in one bill.[32]

• A mere functional relationship between provisions is insufficient; rather, the subjects have to have at least a semblance of

**25.** *In Re: Initiative Petition No. 382, State Question No. 729*, see note 23, supra at ¶ 14 (citing *In Re Initiative Petition No.* 314, 1980 OK 174, ¶¶ 59–60, 625 P.2d 595).

**26.** *Fent v. State ex rel. Office of State Finance*, 2008 OK 2, ¶¶ 22–23, 184 P.3d 467.

**27.** *Fent v. State of Oklahoma, ex rel. Oklahoma Capitol Improvement Authority*, 2009 OK 15, ¶¶ 20–21, 214 P.3d 799.

**28.** *Fent v. State of Oklahoma, ex rel. Oklahoma Capitol Improvement Authority*, see note 27, supra at ¶ 24.

**29.** *Fent v. State of Oklahoma, ex rel. Oklahoma Capitol Improvement Authority*, see note 27, supra at ¶ 16.

**30.** *Compare Fent v. State of Oklahoma, ex rel. Oklahoma Capitol Improvement Authority*, see note 27, supra at ¶ 16 (Senate Bill 1374 violated the germaneness requirement of the single subject rule of art. 5, § 57 of the Oklahoma Constitution because it addressed the separate subjects of bond issuance for: 1) the Native American Cultural and Educational Authority; 2) the State's Oklahoma Conservation Commission; and 3) a

local River Parks Authority.) *with Edmondson v. Pearce*, 2004 OK 23, ¶ 45, 91 P.3d 605 (No violation of the single-subject requirement where Oklahoma's anti-cockfighting Act was unequivocally concerned with one subject and the Act was a unified, germane whole, having as its central purpose the prevention of cruelty to birds by outlawing cockfighting and related activities and providing, after a criminal conviction, for the forfeiture of birds or equipment used in any cockfighting endeavor.)

**31.** *In Re Initiative Petition No. 382*, see note 23, supra at ¶ 15 (We held that a ballot initiative proposing a new statute limiting the power of public bodies to take private property by eminent domain and in the same initiative also requiring just compensation to be paid to landowners negatively affected by a zoning law "presents a voter with exactly the sort of choice the single subject rule was enacted to prevent.")

**32.** *Thomas v. Henry*, see note 7, supra at ¶¶ 29–31 (Insertion of a single non-germane provision restricting those who completed a GED from obtaining in-state tuition rates for higher education, into a bill purporting to control illegal immigration, violated the single subject rule.)

relation to each other and must not be misleading or provide the voter or legislator with an all or nothing choice.[33]

¶ 19 A culinary example may be more illustrative. If you make a peanut butter cookie, it is apparent that it is a smooth, one flavor cookie. It is still a peanut butter cookie even if you use crunchy peanut butter, because its major flavor is still peanuts. When you add chocolate chips, pecans, coconut, M & M's, raisins, and dried cranberries, the additional discrete ingredients change the homogenous nature of a peanut butter cookie into a jumble of different tastes and textures. It is still a cookie, it is just not a peanut butter cookie. Likewise, the CLRA is still a statute, but it ceased to be a statute for the reform of civil procedure when sections having nothing to do with civil procedure were included.

¶ 20 The nature of the single subject rule necessarily requires that legislation be examined on a case by case basis.[34] The aforementioned guidelines illustrate how legislation can be drafted which satisfies the requirements of Okla. Const., art. 5, § 57.

**CONCLUSION**

¶ 21 It is not the role of this Court to determine the wisdom of legislation. It is my hope that in the future the Court will not be forced to invalidate reform legislation because it runs contra to the Oklahoma Constitution.

WINCHESTER, J., with whom Taylor, J. joins, dissenting.

¶ 1 I respectfully dissent. This opinion demonstrates how difficult the single-subject

rule is to explain with the precision necessary to instruct a legislative body concerning the rule's application. House Bill 1603 is commonly called the Comprehensive Lawsuit Reform Act of 2009. Its purpose is tort reform. The majority opinion recites the number of sections and some of the subjects addressed within H.B. 1603. The majority opinion states that the provisions are so unrelated that those voting on the law were faced with an all-or-nothing choice. It says this Court will not pick and choose which provisions of the bill are germane and cites *Thomas v. Henry*, 2011 OK 53, 260 P.3d 1251, as a comprehensive review of our case law regarding the single-subject rule. The majority opinion explains that in *Thomas* this Court severed the offending provisions of the Oklahoma Taxpayer and Citizens Protection Act of 2007, but that bill had only 13 sections so the Court easily discerned the sections related to discouraging illegal immigration, the subject of that act.

¶ 2 Early after statehood, the Supreme Court in *Griffin v. Thomas*, 1922 OK 134, ¶ 17, 206 P. 604, 609, quoted with approval from 25 R.C.L.[1], § 88, p. 842:

"The term 'subject' as used in these provisions is to be given a broad and extended meaning, so as to allow the Legislature full scope to include in one act all matters having a logical or natural connection. If all parts of an act relate directly or indirectly to the general subject of the act, it is not open to the objection of plurality.... This constitutional provision does not contain any limitation on the compre-

---

**33.** *Fent v. State of Oklahoma, ex rel. Oklahoma Capitol Improvement Authority*, see note 27, supra at ¶¶ 19–21. (We reiterated that this Court has rejected a broad, thematic approach to the single-subject requirement.)

**34.** Examination by this Court of a particular piece of legislation, at a particular time, is not always appropriate. In *Fent v. Fallin et. al.*, 111,199 (Okla.2013), we declined to assume original jurisdiction in a challenge to a bill authorizing a statewide charter school and designating a separate $30 million appropriation to public schools. The Supreme Court is not constrained to exercise its original jurisdiction in any case; whether it does so is always a matter of discretion. *Application of Sewer Improvement Dist. No.*

*1*, 1950 OK 64, ¶ 8, 216 P.2d 303. In exercising its discretion, the Court is mindful of the limited role of its original jurisdiction. *Kitchens v. McGowen*, 1972 OK 140, 503 P.2d 218. A decision on the part of this Court not to accept original jurisdiction should not be taken as a decision on the merits in favor of one party or the other. A request that this Court assume original jurisdiction is not the same as an appeal. The right of appeal in Oklahoma is a constitutional right guaranteed by the Constitution. This cannot be taken away by any act of the Legislature. *Peterman v. Chapman*, 1921 OK 202, ¶ 5, 200 P. 776.

**1.** 25 William Mark McKinney & Burdett Alberto Rich, RULING CASE LAW 842 (1919).

hensiveness of the subject, which may be as comprehensive as the Legislature chooses to make it, provided it constitutes, in the constitutional sense, a single subject and not several; it may include innumerable minor subjects, provided that all the minor subjects, when combined, form only one general subject or topic."

¶3 The majority opinion gives little guidance to the legislature regarding why the law found in H.B. 1603 is unconstitutional. What is the lesson from the majority's analysis of *Thomas v. Henry* and the 13 sections the Court examined within it? Is this Court willing to examine a "comprehensive" bill and consider severing sections if the bill has only 13 sections, but not if it has 90?

¶4 I believe it more likely that the legislature and the public understood the common themes and purposes embodied in the legislation; it was tort reform. The vote in the House of Representatives was 86 in favor of the bill and 13 opposed. The Senate voted 42 in favor of the bill and 5 against it. Governor Brad Henry signed the bill. This bill appears to have had overwhelming support of two branches of government.

¶5 Although the majority recites case law that "a heavy burden is cast on those chal-

lenging a legislative enactment to show its unconstitutionality" and that "[e]very presumption is to be indulged in favor of the constitutionality of a statute," the majority's result does not appear to meet that burden or fulfill that presumption. Requiring affidavits in professional malpractice cases, 12 O.S. 2011, § 19, appears to me to be both related and germane to tort reform.[2] Without deciding the wisdom, need, or desirability of H.B. 1603,[3] I have no trouble concluding that the affidavit requirement of § 19 has a close relationship to the title of the Act, which subject is comprehensive lawsuit reform.

¶6 In addition, this Act has a severability clause, as did the Oklahoma Taxpayer and Citizens Protection Act of 2007, which this Court reviewed for a violation of the single-subject rule in *Thomas.* Even if the H.B. 1603 did not have a severability clause, 75 O.S.2011, § 11a specifically provides for severance if any of the provisions of an act are found to be unconstitutional.[4]

¶7 Are topics such as "civil procedure" or "tort reform" too broad to be encompassed within one bill? In 1978, the legislature passed the Civil Procedure—Criminal Proce-

---

2. "Oklahoma adheres to the germaneness test and the most relevant question under such analysis is whether a voter (or legislator) is able to make a choice without being misled and is not forced to choose between two unrelated provisions contained in one measure. *In re Initiative Petition No. 382,* 2006 OK 45, ¶9, 142 P.3d 400, 405." *Thomas v. Henry,* 2011 OK 53, ¶26, 260 P.3d 1251, 1260.

3. Where legislation is constitutionally valid, this Court is not authorized to delve into the wisdom, need, or desirability of a legislative enactment. *Oklahoma Industries Authority v. Barnes,* 1988 OK 98, ¶14, 769 P.2d 115, 119.

4. Title 75 O.S.2011, § 11a (1) provides:

"In the construction of the statutes of this state, the following rules shall be observed:

"1. For any act enacted on or after July 1, 1989, unless there is a provision in the act that the act or any portion thereof or the application of the act shall not be severable, the provisions of every act or application of the act shall be severable. If any provision or application of the act is found to be unconstitutional and void, the remaining provisions or applications of the act shall remain valid, unless the court finds:

"a. the valid provisions or application of the act are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or

"b. the remaining valid provisions or applications of the act, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

"2. For acts enacted prior to July 1, 1989, whether or not such acts were enacted with an express provision for severability, it is the intent of the Oklahoma Legislature that the act or any portion of the act or application of the act shall be severable unless:

"a. the construction of the provisions or application of the act would be inconsistent with the manifest intent of the Legislature;

"b. the court finds the valid provisions of the act are so essentially and inseparably connected with and so dependent upon the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or

"c. the court finds the remaining valid provisions standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

dure—Evidence Code.[5] It had a total of 78 sections. It is likely that some of the legislators who voted in favor of the bill compromised to secure its passage. It did involve one subject, evidence. The Uniform Commercial Code was passed by the legislature in 1961.[6] It had 10 articles and a total of 368 sections. Its articles included Sales, which contains 97 separate sections; Commercial Paper; Bank Deposits and Collections; Letters of Credit; Bulk Transfers; Warehouse Receipts and Special Provisions; Investment Securities; Secured Transactions, Sales of Accounts, Contract Rights and Chattel Paper; and a Repealer Section that removed amended statutes throughout titles 6, 9, 13, 15, 18, 23, 24, 42, 46, 48, 55, and 60. When considering all that it encompasses, the Uniform Commercial Code likely resulted in compromises by legislators to pass an important and significant piece of legislation.

¶ 8 Logrolling is the "legislative practice of including several propositions in one measure or proposed constitutional amendment so that the legislature or voters will pass all of them, even though these propositions might not have passed if they had been submitted separately." [7] If this is a description of the "single-subject" rule, the legislature would have substantial difficulty passing any comprehensive legislation including any uniform codes that are generally adopted among the states. One recent article commented that although the single-subject rule "is a noble attempt to reign in state legislatures and encourage the passage of more coherent and uniform laws supported in fact by majority votes, the implementation of the states' various single subject rules has had mixed success, at best." [8] It further observed:

"The Oklahoma Supreme Court defines a 'single subject' as one that has 'a readily apparent common theme and purpose.' Likewise, in Minnesota, the courts have found that a single subject means 'one general subject' and in Alaska, it means 'one general idea.' Similarly, in Alabama,

'one subject' means that the provisions are referable to and cognate of the bill's subject. No doubt, with definitions as amorphous as these, it is easy to see how determinations of whether a subject is indeed 'single' can be based on a number of subjective factors including possibly the popularity or necessity of the legislation." [Footnotes omitted.]

¶ 9 Legislation requires some compromise. At times, even the wording of a single statute on a single subject may result in an all-or-nothing choice for those voting on it. The single-subject dilemma leads me to conclude that this Court should adopt a more deferential approach toward the rule. Based on the majority's present opinion, statutes that were enacted in a comprehensive bill, and that have remained as law for years could be found unconstitutional. The legislature will have wasted its time in working on any comprehensive legislation. Such legislation may be declared unconstitutional immediately, or worse, after a few years codified in the official state statutes a whole comprehensive bill will be struck and cause the chaos that will inevitably follow this opinion. Court opinions containing an overly restrictive interpretation of the single-subject rule will likely have a chilling effect on the legislative process. The result will be an exponential number of bills filed along with an expanded legislative process but with no greater assurance the legislation will pass the single-subject test. The severance clause is included to allow the courts to remove unconstitutional sections and still preserve the legislation.

¶ 10 I would find that H.B. 1603 does not violate the single subject rule.

---

5. 1978 Okla.Sess.Laws, ch. 285, §§ 101 through 1103.

6. 1961 Okla.Sess.Laws, pp. 69 through 182.

7. Black's Law Dictionary (Westlaw 9th ed. 2009)

8. Stanley Kaminski and Elinor Hart, *Log Rolling versus the Single Subject Rule*, 80 USLW 1156, 02/28/2012, http://www.duanemorris.com/articles/static/kaminski_hart_bloombergbna_022812.pdf