OSCN Found Document:JOHN v. SAINT FRANCIS HOSPITAL

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 







 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 JOHN v. SAINT FRANCIS HOSPITAL
2017 OK 81
Case Number: 115620
Decided: 10/24/2017
As Corrected: October 25, 2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 81, __ P. __

 




Johnson John, Respondent,
v.
Saint Francis Hospital, Inc., Neurological Surgery, Inc. and Douglas Koontz, M.D., Petitioners.

CERTIORARI REVIEW OF CERTIFIED INTERLOCUTORY ORDER

¶0 Patient filed medical negligence action against surgeon who performed decompressive laminectomies. Surgeon filed a motion to dismiss for failure to attach an affidavit of merit or- -in the alternative- -request an indigency exception. The District Court of Tulsa County, Honorable Jefferson Sellers, found that the affidavit requirement in Okla. Stat. tit. 12, § 19.1, unconstitutionally imposed substantial and impermissible impediments on the patient's right to access the courts and certified its ruling. Surgeon sought certiorari review of the certified interlocutory order which this Court granted.

REVIEW PREVIOUSLY GRANTED
TRIAL COURT AFFIRMED IN PART, REVERSED IN PART
CAUSE REMANDED FOR FURTHER PROCEEDINGS

Timothy G. Best, Matthew B. Free, Travis J. Kirk, BEST & SHARP, Mike Barkley, Teak H. Hull, Jr., THE BARKLEY LAW FIRM, Tulsa, Oklahoma, for Petitioner.
Ronald E. Durbin, II, THE DURBIN LAW FIRM, Tulsa, Oklahoma, for Respondent.
Mithun Mansinghani, Solicitor General, Attorney General's Office, Oklahoma City, Oklahoma.


Colbert, J.
¶1 The dispositive issue on appeal is whether the thrice incarnated affidavit of merit requirement found in Okla. Stat. tit. 12, § 19.1 (Supp. 2013), is unconstitutional. In the wake of Zeier v. Zimmer, 2006 OK 98, 152 P.3d 861, its sequel Wall v. Marouk, 2013 OK 36, 302 P.3d 775, and upon reexamination of the Oklahoma Constitution, the inevitable conclusion is that section 19.1 is an impermissible barrier to court access and an unconstitutional special law. Section 19.1 is stricken.
I.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 On October 30, 2012, Saint Francis Hospital, Inc., Neurological Surgery, Inc., and Douglas Koontz, M.D. (collectively Petitioners) performed decompressive laminectomies of Respondent's, Johnson John (Patient), spine at the C2-3, C3-4, C4-5, C5-6 and C6-7 regions. After the operation, Patient allegedly became partially paralyzed, suffered constant pain, was hospitalized for four months and submitted to additional medical treatment.
¶3 Patient filed this suit against Appellants on May 31, 2016, alleging negligence, gross negligence, medical malpractice and seeking punitive damages for Appellants' failure to render reasonable medical care, breach of the duty of care owed and Patient's resulting injuries. In commencing the action, Patient failed to attach an affidavit of merit to the Petition or otherwise comply with Okla. Stat. tit. 12, § 19.1.[1] That is, Patient did not attach an affidavit attesting that Patient: (1) consulted and reviewed the facts of the claim with a qualified expert, (2) had obtained a written opinion from a qualified expert which included a determination that a reasonable interpretation of the facts support a finding that defendants' actions or omissions constituted negligence and (3) had concluded, on the basis of the review and consultation with the qualified expert, that the claim was meritorious and based on good cause. See id.
¶4 On June 23, 2016, Appellants, in lieu of answer, filed their respective motions to dismiss and asserted, among other things, Patient's failure to include the statutorily required affidavit of merit or, in the alternative, obtain a statutorily recognized exception. On July 8, 2016, Patient averred that the statutory directive unconstitutionally restrained a litigant's right to access the courts and was an unconstitutional special law. On August 5, 2016, the district court provided notice to the Attorney General's office concerning the challenged statute. As intervenor, the Attorney General filed its notice to the court and supplemental authority on October 11, 2016, essentially urging the district court to enforce the affidavit requirements.
¶5 After hearing arguments and reviewing the parties' submissions, the district court overruled Appellants' motions to dismiss. In doing so, the district court rejected Patient's special law challenge but determined that,
section 19.1 unconstitutionally imposes a substantial and impermissible impediment to access to the courts. This barrier is unconstitutional regardless of the financial worth of a litigant and is not cured by excusing the indigent from this burden.
¶6 The district court certified its ruling pursuant to Okla. Stat. tit. 12, § 952(b)(3),[2] finding that its order affected a substantial portion of the underlying action and materially advanced the ultimate determination of the litigation.[3] The district court then acknowledged the inconsistent application of section 19.1 among the district courts statewide; and further urged this Court's immediate review.[4] Likewise, the district court acknowledged section 19.1's potentially sweeping stroke on civil negligence actions requiring expert testimony and this Court's response declaring similar provisions unconstitutional on two separate occasions.
¶7 Appellants requested a stay of the district court proceedings pending the outcome of this appeal. That request, however, was denied as section 19.1 was unavailable for application to Patient's case. Appellants sought review, which this Court previously granted.
II.
STANDARD OF REVIEW
¶8 At issue is the constitutionality and application of Okla. Stat. tit. 12, § 19.1. A statute's constitutional validity, construction and application are legal questions this Court reviews de novo. See Gilbert v. Sec. Fin. Corp. of Okla., Inc., 2006 OK 58, ¶ 2, 152 P.3d 165, 171. In doing so, this Court assumes "plenary independent and non-deferential authority to reexamine a trial court's legal rulings." Kluver v. Weatherford Hosp. Auth., 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084.
¶9 Determining the constitutionality of section 19.1 is this Court's sole prerogative. Douglas v. Cox Ret. Prop., Inc., 2013 OK 37, ¶ 3, 302 P.3d 789. The policy rational, propriety or desirability of section 19.1, however, is not. Id.
III.
DISCUSSION
A. Prior Enactments and Decisions
¶10 At the outset, this Court acknowledges that section 19.1 is the Legislature's third attempt to mandate an affidavit requirement as an indispensable step in the pleading process for certain civil actions. Pursuant to statute, adjudication cannot occur if the plaintiff fails to attach the requisite affidavit to the petition. The first constitutional challenge to the affidavit requirement came in Zeier v. Zimmer, 2006 OK 98, 152 P.3d 861. There, the law singled out medical negligence actions from the garden-variety negligence class and imposed stricter pleading requirements only applicable to actions naming medical professionals as defendants. Id. at ¶ 14, 152 P.3d at 867; see also Okla. Stat. tit. 63, §1-1708.1E (Supp. 2003) (repealed by 2009 Okla. Sess. Laws, § 87, c. 228). As a precursor to filing a medical malpractice action, a plaintiff had to attach an affidavit to the petition stating that the plaintiff:
1) has consulted with a qualified expert; 2) has obtained a written opinion from a qualified expert that the facts presented constitute professional negligence; and 3) has determined, on the basis of the expert's opinion, that the malpractice claim is meritorious and based on good cause.
Zeier, ¶ 8, 152 P.3d at 865. Such requirements were a step-back from and altered the more streamlined Oklahoma Pleading Code the Legislature enacted in 1984. Okla. Stat. tit. 12, § 2008. Contrary to the enactment, the Code does not require a plaintiff to set out detailed facts upon which a claim is based. Rather, a plaintiff was merely required to provide "fair notice of the [. . .] claim and the grounds upon which it rests." Zeier, ¶ 14, 152 P.3d at 867. Oklahoma's adoption of the Code is consistent with this State's constitutional directive mandating uniform procedures for all citizens of the state and equal access to legal institutions. Id. ¶ 18, 152 P.3d at 868. Without question, the affidavit requirement targeted less than an entire class of similarity situated persons or things for different treatment. Moreover, for those plaintiffs alleging res ipsa loquitor- -which negated the need for expert testimony to prove the cause- -a third class emerged. Id. ¶ 16, 152 P.3d at 867-68. The only issue to be resolved then, was whether the statute fell within the absolute and unequivocal prohibition against the passing of special laws listed in Article V, section 46 of the Constitution. Id. ¶ 7, 152 P.3d at 865. We held that it did as the statute was a special law "regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts." Id. ¶ 18, 152 P.3d at 868.
¶11 This Court concluded further that the mandated medical affidavit created an unconstitutional monetary barrier to a plaintiff's guaranteed right of court access under Article II, section 6 of the Oklahoma Constitution. Id. ¶ 26, 152 P.3d at 872-73. The statute not only singled out medical malpractice plaintiffs; but, also placed the plaintiff's financial status directly at issue. Id. A plaintiff's right to adjudication became predicated upon the plaintiff's ability or inability to procure an affidavit and pay for a pre-petition medical opinion. Id. So while general negligence plaintiffs enjoyed a direct path to the courthouse, medical negligence plaintiffs were statutorily detoured. See id. ¶ 32, 152 P.3d at 874.
¶12 In 2013, this Court reexamined the incarnated affidavit requirements in Wall v. Marouk, 2013 OK 36, 302 P.3d 775. The Legislature, in a second attempt, enacted an affidavit requirement exclusively for all professional negligence actions. See HB 1603, c. 228, § 2, eff. November 1, 2009.
¶13 In construing the statute's constitutionality, this Court determined, again, that the provision created a "new subclass of tort victims and tortfeasors known as professional tort victims and tortfeasors." Wall, ¶ 6, 302 P.3d at 779. Like its predecessor in Zeier, victims of professional misconduct bore an enhanced burden of obtaining pre-petition expert review and procuring an expert report as a condition precedent to court access. We said:
[T]he distillate of art. 5, §46 is that the Legislature shall not pass a special law regulating the practice of judicial proceedings before the courts or any other tribunal. This is precisely the situation we face. Title 12 O.S. 2011 §19 creates a new subclass of tort victims and tortfeasors known as professional tort victims and tortfeasors. In doing so, it places an out of the ordinary enhanced burden on these subgroups to access the courts by requiring victims of professional misconduct to obtain expert review in the form of an affidavit of merit prior to proceeding, and it requires the victims of professional misconduct to pay the cost of expert review.
Id. As a special law, the provision unconstitutionally regulated the practice of judicial proceedings before the courts. Id. And, the incarnated pre-petition requirements represented a step-back from Oklahoma's streamlined notice pleading code enacted in 1984. Id. ¶ 8, 302 P.3d at 780.
¶14 The enacted provision also ran afoul of a plaintiff's guaranteed right to court access. Notwithstanding the meaning employed, the statute, conclusively created two classes of tort victims. Professional negligence plaintiffs were required to pay for a pre-petition professional review, opinion, and attest to the same before reaching the courthouse steps. General negligence plaintiffs were not. Finding, Zeier, controlling, this Court inevitably concluded the affidavit requirement was an unconstitutional special law and an economic burden on one's guaranteed right to court access.
B. The Challenged Provision
¶15 Section 19.1, entitled Professional Negligence Action - Expert Opinion Affidavit Requirements - Exemption, is codified in Title 12, Chapter 1B governing Professional Negligence. That section prescribes certain filing requirements and procedures governing all civil negligence actions in which expert testimony is required to establish a departure from the applicable standard of care and resulting harm. Essentially, a plaintiff must attach to the petition an affidavit attesting, at a minimum, that the plaintiff has consulted with and procured a written report from a qualified expert that: identifies the defendant(s) against whom the claim(s) are brought; states that the defendant(s) breached the standard of care, that such breach constitutes negligence, that the plaintiff's claim has merit and is based on good cause. See (A)(1(a-c)). In addition, the statute requires the written report of the qualified expert to identify and explain why the defendant(s) acts or omissions constitute negligence. See (A)(3). Although a defendant may obtain a copy of the expert's opinion, upon which the affidavit of merit is based, the opinion is inadmissable at trial and shall not be utilized in discovery. See (A)(3) and (C). The penalty for a plaintiff's failure to file the affidavit within 90 days after the petition is filed- -or subject to a good cause extension not to exceed 60 additional days- -is mandatory dismissal without prejudice. See (A)(2), (B)(1), and (B)(2). A plaintiff may, however, seek an indigency exemption to the provisions by complying with Section 4 of the act. See § 19.1D.[5] A similar dismissal is mandated for a plaintiff's failure to timely produce a copy of the qualified expert's written opinion at and upon the defendant's request. See (C)(2).
C. Section 19.1 Creates an Impermissible and Unconstitutional Barrier to
A Litigant's Right to Access the Courts
¶16 It is well-settled that every person of this state is afforded the fundamental and constitutional right to access the Oklahoma courts of justice. Established beyond doubt is the guarantee that "[t]he courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice." Okla. Const. art. 2, § 6. This provision "embodies three distinct constitutional guarantees: (1) access to the courts; (2) right-to-a-remedy for every wrong and every injury to person, property, or reputation; and (3) prohibition on the sale, denial, delay or prejudice of justice." Gibby v. Hobby Lobby Stores, 2017 OK 78, ¶ 5, -- P.- --; Okla. Const. art. 2, § 6.
¶17 The newly enacted section establishes exclusive procedures that are triggered only when a plaintiff's civil negligence action requires an expert to establish a breach of the standard of care and negligence. In such circumstances, a plaintiff must engage the services of a qualified expert, procure a written opinion substantiating the merits of the plaintiff's claim, and then the plaintiff must attest to the same in an affidavit. By its expressed terms, section 19.1 requires a plaintiff to clear all the procedural hurdles before the plaintiff reaches the courthouse steps. See generally, § 19.1(A)(1). In fact, a plaintiff's failure to satisfy the requirements within the time prescribed results in a mandatory dismissal of the plaintiff's action without prejudice. See generally, § 19.1. Similarly, a plaintiff's failure to file a proper affidavit or procure the statutorily compliant written opinion is tantamount to not having filed the affidavit at all. See generally, § 19.1.[6] Dismissal is imminent. At a minimum, section 19.1 operates to delay, and in some instances denies, adjudication of a plaintiff's claims for plaintiff's failure to satisfy the section 19.1 procedural hurdles. Thus, a plaintiff's repeated attempts to gain court access, absent the costs for pre-petition expert review and requisite affidavit, is nothing more than a sisyphean exercise.
¶18 As discussed, supra, this exact issue was throughly discussed and ultimately decided in Zeier and Wall. Section 19.1 creates the same court access hurdles this Court has repeatedly declared unconstitutional. The obvious purpose of the affidavit requirement reflects the Legislature's desire to deter and weed out non-meritorious negligence claims. To that end, the Legislature has made section 19.1 an indispensable step in the pleading process, this time for expert negligence actions. But, in spite of its successive enactments, the Legislature has failed to remedy the inequalities this Court continues to identify as problematic in its prior decisions. Like its predecessors, section 19.1 is a costly, meaningless and arbitrary barrier to court access. See Lee v. Bueno, 2016 OK 97, ¶ 30, 381 P.3d 736, 747. To be clear: whether in the context of a medical liability, professional liability, or- -as in this case- -expert liability, court access cannot be conditioned upon a plaintiff's ability or inability to pay "some liability or conditioned coercive collection devices." Wall, ¶ 23, 302 P.3d at 786. Simply stated, section 19.1 is constitutionally infirm.
D. Special Law
¶19 Remarkably, the district court and the parties presume that the Legislature's third incarnation of Section 19.1 cured the special law concerns this Court addressed in its prior decisions. Collectively, they allege section 19.1's reincarnated version now applies even handedly to all plaintiff's required to present expert testimony and the removal of the $40.00 indigency fee cured the constitutional infirmities found in Article V section 46. As section 19.1 is functionally and texturally identical to its predecessors in Zeier and Wall, we disagree.
¶20 Article V section 59 provides: "Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted." Granted, the Legislature may "pass special laws when a general law is not applicable." Reynolds v. Porter, 1988 OK 88, ¶ 13, 760 P.2d 816, 822. But, that authority is not absolute. Article V section 46 of the Oklahoma Constitution forbids the Legislature, except as otherwise provided in the Constitution, from passing any local or special law authorizing certain specified acts, namely- -
Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the methods for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate;
. . .
For limitation of civil or criminal actions;
. . ..
¶21 Since Reynolds v. Porter, this Court has applied a three-prong test to determine whether a statute is an impermissible special law under Sections 46 and 59. 1988 OK 88 ¶ 13, 760 P.2d 816, 822. The Court must determine whether the challenged provision is (1) a special or general law; (2) if the statute is a special law, is there an applicable general law; and (3) "[i]f a general law is not applicable, is the statute a permissible special law?" Id. at ¶ 13, 760 P.2d at 822.
¶22 The line of demarcation between special and general is clearly drawn when a statute singles out less than an entire class for different treatment, making it a special law. Id. at ¶ 14, 760 P.2d at 822. A general law, on the other hand, is a statute that relates to all persons or things in a class. Id. If the statute is special and it appears within section 46, the analysis ends with the first prong. The bounds of section 46 are well-defined. "[O]ur constitutional fathers isolated and set aside for protection against legislative tampering subjects to which general law[s] must always be tailored." Reynolds, ¶ 17, 760 P.2d at 823. Therefore, the Legislature is absolutely and unequivocally prohibited from acting. Id. ¶ 17, 760 P.2d at 822. Under a section 46 analysis, the inquiry then becomes: whether the challenged statute "targets for different treatment less than an entire class of similarly situated persons or things." Id. ¶ 17, 760 P.2d at 823.
¶23 Here, Section 19.1's class defining language- -"[i]n any civil action for negligence wherein the plaintiff shall be required to present the testimony of an expert witness to establish breach of the relevant standard of care and that such breach of duty resulted in harm"- -operates exclusively upon actions in which expert testimony is required to substantiate an element of the plaintiff's claim. By its text, section 19.1 imposes a heightened burden on an expert negligence class that is clearly not applicable to the general negligence class. So, while victims of an expert negligence action must pay for extremely expensive pre-petition expert review and evidentiary materials, general negligence victims do not. See e.g., Zeier v. Zimmer, 2006 OK 98, ¶ 26, 152 P.3d at 872-73.
¶24 Defendants aver that the statute is not an unconstitutional special law as it embraces all actions where expert testimony is required to establish a breach of the standard of care and causation. Interestingly, neither section 19.1 nor Title 12 define the relevant class of expert actions. But this Court has experienced first hand the unintended consequences that result from the perceived ambiguity in the previous enactment. See e.g., Rodney D. Watson & Associates, P.C. v. Knight, 2013 OK 57, 304 P.3d 1039. The determination as to whether a plaintiff is legally required to introduce expert testimony is within the trial court's province, not the plaintiff's. See generally, Christian v. Gray, 2003 OK 10, 65 P.3d 591.
¶25 Nor does section 19.1 or Title 12 define the "qualified expert" a plaintiff must utilize in procuring the pre-petition review and opinion. Qualified expert is defined in only one place: the Affordable Access to Health Care Act. Notably, the AAHCA is the same Act that defined the two affidavit requirements we previously declared unconstitutional. That act defines a qualified expert as a
health care provider who has knowledge of standards of care for the diagnosis, assessment, prevention, treatment or care of the illness, disease, injury or condition involved in the medical liability action. In a case involving a claim for negligent credentialing or corporate negligence, a "qualified expert" means a physician or administrator who has or has had responsibility for credentialing or served on a medical staff committee involved in a credentialing process at the licensed health care entity.
Okla. Stat. tit. 63, § 1-1708.1C.
¶26 The medical affidavit requirements in Zeier, were codified at Okla. Stat. tit. 63, § 1-1708.1E - Medical Liability Action - Contents of Affidavit - Opinions from Expert. (repealed by 2009 Okla. Sess. Laws, § 87, c. 228). The professional affidavit requirements in Wall, were codified at Okla. Stat. tit. 12, § 19, Chapter 1B - Professional Negligence. And, the expert affidavit requirements we consider today are codified, like its predecessor, at Okla. Stat. tit. 12, § 19.1, Chapter 1B - Professional Negligence. Qualified expert, medical liability action and professional negligence are all defined at Okla. Stat. tit. 63, § 1-1708.1C. Section 19.1, like its predecessor, does not contain a definition for qualified expert. Since, qualified expert is in the AAHCA at Okla. Stat. tit. 63, § 1-1708.1C, that definition controls and is applicable to section 19.1. We reiterate, "[w]hen the provisions of a statute assign one meaning to a word or phrase, its definition will apply in every other instance in which the same word is found anywhere else in the statutory compilation." Wall, ¶ 12, 302 P.3d at 782. Thus, an expert negligence action, professional negligence action and medical liability action are essentially the same as all three are only statutorily defined in the medical malpractice context. See Okla. Stat. tit. 63, § 1-1708.1C; see also, Wall, ¶ 13, 302 P.3d at 782.
¶27 If the Legislature intended section 19.1 to apply to all expert negligence actions, then its failure to say so renders the operative class vague. This is precisely the situation we faced in Wall. See Wall, ¶ 14, 302 P.3d at 782. Black's Law Dictionary defines "expert" as "[o]ne who is knowledgeable in a specialized field, that knowledge being obtained from either education or personal experience." Although "qualified expert" is omitted from Black's Law Dictionary, the term "qualified" is defined as "[a]dapted; fitted; entitled; susceptible; capable; competent; fitting; possessing legal power or capacity; eligible; as a 'qualified voter'."
¶28 The possibilities are endless. Left open, a plaintiff is required to postulate, pre-petition, whether section 19.1 applies, and if so, whether the selected expert satisfies the "qualified expert" requirement. It is well-settled that "[t]he qualification of an expert witness is generally within the sound discretion of the trial court . . .." Williams Natural Gas Co. v. Perkins, 1997 OK 72, ¶ 17, 952 P.2d 483, 489. Like the overly inclusive class in Wall, section 19.1's overly broad application is unworkable. See Wall, ¶ 16, 302 P.3d 784.
¶29 Section 19.1 also impinges on the district court's adjudicative authority. By its expressed terms, the statute operates to remove any exercise of judicial discretion from the district court's purview. In its stead, are four legislatively mandated dismissal provisions for failing to file the affidavit or produce the expert report, namely- -at the commencement of the action, (A)(2)(b); ninety days post petition filing, (B)(1); sixty days after the ninety day extension, (B)(2); and at the defendant's request absent good cause for the plaintiff's non-compliance in producing or procuring the qualified expert's report. (C)(2). Except in cases where the plaintiff has been judicially declared indigent, the district courts are similarly restrained from exercising judicial discretion and dismissal of the plaintiff's action is imminent. Functionally, section 19.1 divests the district courts of the power to adjudicate civil negligence actions that require an expert to substantiate the plaintiff's claim unless and until the plaintiff satisfies the conditions precedent. Legislatively removing "the discretionary component in [the] adjudicative process is a usurpation of the courts' freedom that is essential to the judiciary's independence from the other two branches." Yocum v. Greenbriar Nursing Home, 2005 OK 27, ¶ 13, 130 P.3d 213, 220. This it cannot do.
¶30 Section 19.1 also serves to limit the admissibility of certain types of evidence admissible by parties in the trial of civil negligence cases requiring an expert. Whether in trial or discovery, the statute expressly prohibits the parties' introduction or inquiry into the pre-petition expert opinion. On one hand, the statute mandates a plaintiff to pay for pre-petition expert review and opinion before commencing an action; yet, on the other hand, renders that same evidence useless. See (A)(3). The expert affidavit requirements are merely technicalities.
¶31 Although the verbiage utilized in section 19.1 varies slightly from its predecessors, section 19.1 is functionally and texturally identical. As discussed, supra, the class defining language in Wall was "actions for professional negligence." In Zeier, the class defining language was "medical liability actions." And, here, the class defining language is "actions requiring . . . a qualified expert . . . to establish breach of the relevant standard of care and that such breach of duty resulted in harm." 19.1(A). Functionally, 19.1 operates on a subset of negligence plaintiffs for different evidentiary treatment based on the type of action the plaintiff pursues. See Wall; see also, Zeier. Section 19.1 has the exact operative effect as its two incarnated versions. Section 19.1 is an unconstitutional special law regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts.
¶32 The trilogy of merit affidavits discussed today are successive enactments that target medical malpractice actions. "A prima facie case of medical malpractice, like all negligence claims, contains three elements: (a) a duty owed by the defendant to protect the plaintiff from injury, (b) a failure to properly exercise or perform that duty and (c) plaintiff's injuries proximately caused by the defendant's failure to exercise his duty of care." Robinson v. Okla. Nephrology Assoc., Inc., 2007 OK 2, ¶ 9, 154 P.3d 1250, 1253-54. Although all negligence plaintiffs must substantiate all three elements during the course of the litigation, one need not do so to a specifically high level of probability or absolute certainty before entering the courthouse doors. Id. ¶ 11, 154 P.3d at 1254; see also, Wall, ¶ 8, 302 P.3d at 780. Here, the Legislature's use of a synonymous phrase, in an attempt to cure the constitutional infirmities embodied in its prior enactments, does not pass constitutional muster.
IV.
CONCLUSION
¶33 Pursuant to Article II, section 6 of the Oklahoma Constitution, access to the court system is a fundamental right. Likewise, the Article V, section 46 prohibition against special laws and the Article II, section 6 provisions of the Oklahoma Constitution are intertwined and serve the same ends. This is not new. We addressed those exact issues in Zeier and Wall. Thus, unless we violate Oklahoma Constitution Article II, section 6 and Article 5, section 46, the statute defining "qualified expert" found at Title 63, § 1-1708.1C of the Oklahoma Statutes, and simultaneously overrule Wall v. Marouk, 2013 OK 36, 302 P.3d 775, and Zeier v. Zimmer, 2006 OK 98, 152 P.3d 861, there is but one result this Court can reach.
¶34 Section 19.1, found at Title 12 of the Oklahoma Statutes, is an impermissible barrier on a plaintiff's guaranteed right to court access and an unconstitutional special law. The district court order is affirmed in part and reversed in part. This cause is remanded for further proceedings consistent with this opinion.

REVIEW PREVIOUSLY GRANTED
TRIAL COURT AFFIRMED IN PART, REVERSED IN PART
CAUSE REMANDED FOR FURTHER PROCEEDINGS

Concur: Combs, C.J.,Kauger, Watt, Winchester, Edmondson, Colbert and Reif, JJ.
Dissent: Gurich, V.C.J.
Recuse: Wyrick, J.

FOOTNOTES

[1] Oklahoma Statutes Citationized
Title 12. Civil Procedure
Chapter 1B - Professional Negligence
Section 19.1 - Professional Negligence Action - Expert Opinion
Affidavit Requirements - Exemption
A. 1. In any civil action for negligence wherein the plaintiff shall be required to present the testimony of an expert witness to establish breach of the relevant standard of care and that such breach of duty resulted in harm to the plaintiff, except as provided in subsection B of this section, the plaintiff shall attach to the petition an affidavit attesting that:
a. the plaintiff has consulted and reviewed the facts of the claim with a qualified expert,
b. the plaintiff has obtained a written opinion from a qualified expert that clearly identifies the plaintiff and includes the determination of the expert that, based upon a review of the available material including, but not limited to, applicable records, facts or other relevant material, a reasonable interpretation of the facts supports a finding that the acts or omissions of the defendant against whom the action is brought constituted negligence, and
c. on the basis of the review and consultation of the qualified expert, the plaintiff has concluded that the claim is meritorious and based on good cause.
2. If the civil action for negligence is filed:
a. without an affidavit being attached to the petition, as required in paragraph 1 of this subsection, and
b. no extension of time is subsequently granted by the court, pursuant to subsection B of this section, the court shall, upon motion of the defendant, dismiss the action without prejudice to its refiling.
3. The written opinion from the qualified expert shall state the acts or omissions of the defendant or defendants that the expert then believes constituted negligence and shall include reasons explaining why the acts or omissions constituted negligence. The written opinion from the qualified expert shall not be admissible at trial for any purpose nor shall any inquiry be permitted with regard to the written opinion for any purpose either in discovery or at trial.
B. 1. The court may, upon application of the plaintiff for good cause shown, grant the plaintiff an extension of time, not exceeding ninety (90) days after the date the petition is filed, except for good cause shown, to file in the action an affidavit attesting that the plaintiff has obtained a written opinion from a qualified expert as described in paragraph 1 of subsection A of this section.
2. If on the expiration of an extension period described in paragraph 1 of this subsection, the plaintiff has failed to file in the action an affidavit as described above, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling. If good cause is shown, the resulting extension shall in no event exceed sixty (60) days.
C. 1. Upon written request of any defendant in a civil action for negligence, the plaintiff shall, within ten (10) business days after receipt of such request, provide the defendant with:
a. a copy of the written opinion of a qualified expert mentioned in an affidavit filed pursuant to subsection A or B of this section, and
b. an authorization from the plaintiff in a form that complies with applicable state and federal laws, including the Health Insurance Portability and Accountability Act of 1996, for the release of any and all relevant records related to the plaintiff for a period commencing five (5) years prior to the incident that is at issue in the civil action for negligence.
2. If the plaintiff fails to comply with paragraph 1 of this subsection, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling.
D. A plaintiff in a civil action for negligence may claim an exemption to the provisions of this section based on indigency pursuant to the qualification rules established as set forth in Section 4 of this act.
Okla. Stat. tit. 12, § 19.1 (Supp. 2013).

[2] In pertinent part, that section reads:
. . . .
(b) The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof:
. . . .
2. An order that discharges, vacates or modifies or refuses to vacate or modify a provisional remedy which affects the substantial rights of a party; or grants, refuses, vacates, modifies or refuses to vacate or modify an injunction; grants or refuses a new trial; or vacates or refuses to vacate a final judgment;
. . . .
The failure of a party to appeal from an order that is appealable under either subdivision 2 or 3 of subsection (b) of this section shall not preclude him from asserting error in the order after the judgment or final order is rendered.
Okla. Stat. tit. 12, § 952(b)(3).

[3] Patient's case, sub judice, is a refiling of a previous action pursuant to Okla. Stat. tit. 12, § 100. Therefore, if this Court dismisses Patient's action, such dismissal is tantamount to dismissal with prejudice. While the prior dismissal is noticed, it does not, however, drive this Court's probe into the constitutionality of section 19.1.

[4] At least nine courts have enforced the statute and/or found the statute to be constitutional; however, two courts have found the statute to be unconstitutional and/or unenforceable.

[5] Notably, the only reference to an indigency exemption within Title 12 is actually found in section 192.1, not section 4 as section 19.1D indicates. Section 192.1 - Indigency Exemption from Affidavit of Merit - Procedure - Promulgation of Rules by the Supreme Court reads:
A. When a plaintiff requests an indigency exemption from providing an affidavit of merit in a civil action for negligence pursuant to Section 2 of this act, such person shall submit an appropriate application to the court clerk, on a form created by the Administrative Director of the Courts, which shall state that the application is signed under oath and under the penalty of perjury and that a false statement may be prosecuted as such.
B. 1. The Supreme Court shall promulgate rules governing the determination of indigency for a plaintiff claiming an exemption from providing an affidavit of merit in a civil action for negligence pursuant to Section 2 of this act. The initial determination of indigency shall be made by the Chief Judge of the Judicial District or a designee thereof, based on the plaintiff's application and the rules provided herein.
2. Upon promulgation of the rules required by law, the determination of indigency shall be subject to review by the Presiding Judge of the Judicial Administrative District.
Laws 2013, 1st Extr. Sess., SB 1, c. 12, § 4.

[6] See e.g., Richardson, Richardson and Boudreaux, PLCC v. Morrissey, 2012 OK 52, 283 P.3d 308 (A trial court, in a professional negligence action, is required to dismiss plaintiff's insufficient or otherwise non-compliant affidavit under § 19).




 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 88, 760 P.2d 816, 59 OBJ 1987, Reynolds v. Porter
Discussed at Length
 1993 OK 85, 859 P.2d 1081, 64 OBJ 2009, Kluver v. Weatherford Hosp. Authority
Discussed
 1997 OK 72, 952 P.2d 483, 68 OBJ 2080, WILLIAMS NATURAL GAS COMPANY v. PERKINS
Discussed
 2003 OK 10, 65 P.3d 591, CHRISTIAN v. GRAY
Discussed
 2005 OK 27, 130 P.3d 213, YOCUM v. GREENBRIAR NURSING HOME
Discussed
 2006 OK 58, 152 P.3d 165, GILBERT v. SECURITY FINANCE CORP OF OKLAHOMA, INC.
Discussed
 2006 OK 98, 152 P.3d 861, ZEIER v. ZIMMER, INC.
Discussed at Length
 2007 OK 2, 154 P.3d 1250, ROBINSON v. OKLAHOMA NEPHROLOGY ASSOCIATES, INC.
Discussed
 2012 OK 52, 283 P.3d 308, RICHARDSON, RICHARDSON AND BOUDREAUX, PLCC v. MORRISSEY
Discussed
 2013 OK 36, 302 P.3d 775, WALL v. MAROUK
Discussed at Length
 2013 OK 37, 302 P.3d 789, DOUGLAS v. COX RETIREMENT PROPERTIES, INC.
Discussed
 2013 OK 57, 305 P.3d 1039, RODNEY D. WATSON & ASSOCIATES, P.C. v. KNIGHT
Cited
 2016 OK 97, 381 P.3d 736, LEE v. BUENO
Discussed
 2017 OK 78, GIBBY v. HOBBY LOBBY STORES INC.
Cited
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 19, Repealed
Cited